In re Abella, Querellado.

Solicitud presentada por el Attorney General sobre separación del querellado del ejercicio de la profesión de abogado y del notariado.

No. 12.—Resuelto en julio 27, 1917.

Abogados—Separación del Ejercicio de la Abogacía—Conspiración Cometida en Conexión con el Cargo de Abogado—Depravación Moral.—Cuando un delito menos grave (*misdemeanor*), implique o no depravación moral, es

cometido por un abogado en conexión con el ejercicio de la abogacía y dicho abogado es declarado culpable de tal delito, puede ser suspendido o destituído de su profesión por la Corte Suprema.

ID. — ID. — NOTARIOS PÚBLICOS — TÍTULO DE NOTARIO ADQUIRIDO INDEPENDIENTEMENTE DEL DE ABOGADO.—Dentro de un procedimiento para la separación de un abogado del ejercicio de su profesión iniciado de acuerdo con la ley de 11 de marzo de 1909, no puede separarse a dicho abogado de su cargo de notario, si ejerce esta última profesión, no a consecuencia de su título de abogado, sino a virtud de un título independiente adquirido mediante examen practicado con arreglo a la ley sobre la materia de 10 de febrero de 1902.

Los hechos están expresados en la opinión.

Abogado del querellante: *Sr. Salvador Mestre, Fiscal del Supremo.*

Abogados del querellado: *Sres. Jacinto Texidor* y *E. Acuña Aybar.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El Fiscal de esta Corte Suprema actuando por delegación del Fiscal General de Puerto Rico, solicitó que se separara a Luis Abella Blanco del ejercicio de su profesión de abogado, así como también del de la de notario, por virtud de los siguientes hechos:

"1. Luis Abella Blanco es un abogado admitido ante la Corte Suprema de Puerto Rico en diciembre 14 de 1906, habiéndosele expedido un certificado para postular ante los tribunales insulares, con fecha 17 de diciembre del mismo año. II. El querellado Luis Abella Blanco es asimismo notario público, habiendo sido autorizado para ejercer el notariado por virtud de examen prestando juramento ante el Tribunal Supremo de Puerto Rico en diciembre 2 de 1902, y habiéndose inscrito en la Secretaría de Puerto Rico como tal notario, en 20 de diciembre de 1905. III. Que allá para el 17 de abril del año 1911 el Fiscal del Distrito de Guayama formuló acusación contra el querellado Luis Abella Blanco, Pastor Díaz, Pedro G. Goico y José C. Ramos, por un delito de conspiración, cuya acusación en cinco cargos distintos establece sustancialmente los siguientes hechos:

" 'Que por los días 28 de diciembre de 1909 y 2 de diciembre de 1910 se iniciaron dos pleitos en la Corte de Distrito de Guayama, en los que Josefa Rivera era la parte demandante y Pastor Díaz el demandado, siendo uno de dichos pleitos sobre indemnización por incumplimiento de promesa de matrimonio, y el otro solicitando indemni-

zación por seducción, siendo José C. Ramos el abogado de Pastor Díaz en los dos pleitos y Luis Abella el de Josefa Rivera en los mismos; que el día 26 de enero de 1911 los acusados Pastor Díaz, Luis Abella, José C. Ramos y Pedro G. Goico, ilegal, corrupta, fraudulenta y criminalmente conspiraron y se pusieron de acuerdo y se asociaron para conseguir que la demandante Josefa Rivera firmara dos mociones de desistimiento en cada uno de dichos pleitos, y presentarlas a la corte a fin de hacer creer y entender que los pleitos habían sido transados y que Josefa Rivera estaba conforme en que se desistiera de ellos; que los dichos acusados Pastor Díaz, Luis Abella, José C. Ramos y Pedro G. Goico, ilegal y criminalmente, conspiraron y se pusieron de acuerdo el mismo día 26 de enero de 1911, en el pueblo de Guayama, para conseguir que Josefa Rivera firmara un acta notarial ante el acusado Luis Abella, actuando como notario, en unión de un tal Ramón Jiménez, de oficio cochero y residente en Ponce, quien no conocía a la Josefa Rivera ni la había visto nunca hasta entonces, ni jamás había tenido ninguna clase de relaciones sexuales con ella, para que viniese de dicha ciudad de Ponce mediante remuneración pagada, o que había de ser pagada por dicho Pastor Díaz, teniendo conocimiento del hecho los otros acusados, con el fin de que firmaran la referida Josefa Rivera y Ramón Jiménez dicha acta notarial, en cuyo documento el Jiménez reconocía ser el padre de un niño llamado Ramón Rivera, hijo de la demandante Josefa Rivera y Pastor Díaz; que todos los acusados se confabularon ilegalmente y se pusieron de acuerdo por medio de falsas y fraudulentas simulaciones, e indujeron a Josefa Rivera a firmar el mencionado documento notarial, haciéndola creer que al otorgarse éste no perjudicaba ni sus derechos ni los de su hijo Ramón, sino que Pastor Díaz se confesaba padre del mencionado hijo de la Rivera, cuando en verdad el citado documento notarial perjudicaba los derechos suyos y los de su hijo, porque no era tal reconocimiento de hijo natural por parte de Pastor Díaz a favor del hijo de la Rivera, sino que Ramón Jiménez se confesaba falsamente ser el padre de dicho niño; que los citados acusados conspiraron, se confabularon y pusieron de acuerdo para defraudar al menor Ramón Rivera para privarle para siempre de su derecho de acción (*cause of action*) y de su derecho de ejercitar tal acción, bien por sí mismo o por su madre, tutor o representante legal, contra su padre el citado Pastor Díaz, para establecer su estado y condición civil como hijo natural reconocido de Pastor Díaz; y que los mismos acusados Luis Abella, José C. Ramos, Pedro G. Goico y Pastor Díaz, ilegal, fraudulenta y criminalmente, se asociaron y pusieron de acuerdo para

obtener y asegurar a favor del referido Pastor Díaz inmunidad para siempre de su responsabilidad para con Josefa Rivera y su hijo Ramón Rivera por acciones que pudieran ser establecidas por éstos, o por cualquiera de éstos, por perjuicios, o una reclamación a su propiedad por su hijo natural reconocido Ramón Rivera, llevando a efecto esto por medio de falsas, fraudulentas y maliciosas manifestaciones, redactando y haciendo que fuesen redactadas las dos mociones de desistimiento ya dichas y el acta notarial también citada.'

"IV. Celebrado el juicio por todos sus trámites legales la Corte de Distrito de Guayama, en virtud de la acusación que antecede, dictó sentencia contra todos los acusados mencionados, excepto José C. Ramos, declarándoles culpables de un delito de conspiración e imponiéndoles la pena de un año de cárcel con trabajos forzados y mil dólares de multa a cada uno y costas. V. Que apelada dicha sentencia para ante este Tribunal fué declarado sin lugar el recurso y confirmada la sentencia apelada, en 27 de marzo de 1915. VI. Que el querellado presentó recurso de error para ante la Corte Suprema de los Estados Unidos contra la sentencia de esta Hon. Corte, habiendo aquella Suprema Corte, por resolución de 12 de marzo de 1917, desestimado por falta de jurisdicción dicho recurso, y este Tribunal Supremo, por resolución de junio 19 de 1917, ordenó fuera remitida a la corte de su orígen la sentencia y opinión de ésta para la ejecución de la sentencia.''

Notificado debidamente el querellado, archivó, el 9 de julio de 1917, un escrito de excepción previa sosteniendo que de la querella no aparecía alegación alguna que pudiera dar origen a la destitución del querellado como notario público de Puerto Rico, y luego, el día de la vista, 12 de julio de 1917, presentó una llamada "moción sobre jurisdicción" pidiendo a la corte que se declarara sin ella para resolver acerca de la destitución del querellado como notario. También se presentó en el acto de la vista una moción oral sobre eliminación del párrafo tercero de la querella. La corte resolvió que el procedimiento iniciado continuara ya que su jurisdicción para intervenir en casos sobre separación de abogados del ejercicio de su profesión (*disbarment*) está expresamente reconocida por la ley, reservándose resolver en su día si procedía o no

separar al querellado no sólo del ejercicio de su profesión de abogado sí que también de la de notario.

Los hechos alegados en la querella quedaron plenamente confirmados por la prueba. El querellado se encuentra actualmente en la cárcel del distrito de Guayama sufriendo condena por el delito de conspiración a que se refiere la querella.

La sección 9 de la ley aplicable (Compilación de 1911, p. 37), dice en lo pertinente, así: "El abogado que fuere culpable de engaño, conducta inmoral (*mal-practice*), delito grave (*felony*) o delito menos grave (*misdemeanor*), en conexión con el ejercicio de su profesión, o que fuere culpable de cualquier delito que implicare depravación moral, podrá ser suspendido o destituído de su profesión por la Corte Suprema de Puerto Rico  *  *  *."

Dejando a un lado el hecho de si el delito menos grave (*misdemeanor*) de conspiración cometido por el querellado implica o no depravación moral, opinamos que es claro que fué cometido en conexión con su cargo de abogado y que por tanto el querellado debe ser separado del ejercicio de su dicha profesión.

Se ha querido sostener que el querellado fué declarado culpable a consecuencia únicamente de su actuación como notario y que ejerciendo él la notaría por virtud de un título independiente, ninguna relación tuvo la causa que se le siguiera con el ejercicio de la abogacía por parte del querellado. Esto no es así. De todo el proceso surge el hecho de que fué precisamente la condición de abogado del querellado la que lo llevó a intervenir en la conspiración. Su condición de notario le sirvió para dar fin a la obra autorizando por sí mismo un documento público que era necesario. Véase lo que dijo esta corte, por medio de su juez asociado Sr. Aldrey, en la opinión emitida para fundamentar la sentencia del tribunal de distrito de Guayama por virtud de la cual fué condenado el querellado.

"La acusación imputó sustancialmente a los apelantes, uno de los cuales era el querellado, 'que teniendo Jósefa Rivera en tramitación

en el Tribunal de Distrito de Guayama dos pleitos contra Pastor Díaz reclamándole indemnización, uno por incumplimiento de promesa de matrimonio y otro por seducción se confabularon y pusieron de acuerdo para conseguir que Josefa Rivera firmara dos mociones de desistimiento de esos pleitos para presentarlas al tribunal haciéndole creer que los pleitos habían sido transados y que la demandante estaba conforme en terminarlos; que las mociones fueron firmadas y presentadas al tribunal, habiendo obtenido su firma mediante el engaño de que una escritura que la hicieron firmar prevaliéndose de su menor edad y de su ignorancia, pues no sabe leer aunque sí firmar, era el reconocimiento que hacía Pastor Díaz de ser hijo suyo el hijo tenido por Josefa Rivera, cuando en verdad en dicha escritura dicha Josefa Rivera, reconocía con Ramón Jiménez que habían procreado dicho niño, siendo así que nunca había tenido relaciones de ninguna clase con Jiménez, escritura que tenía por objeto no sólo pervertir la justicia pública con las referidas mociones sino también privar para siempre al hijo de Josefa Rivera de su derecho de acción para establecer su estado y condición civil como hijo natural de Pastor Díaz y obtener también inmunidad por siempre para éste en cuanto a su propiedad respecto a reclamaciones que pudieran hacerle Josefa Rivera y su hijo Ramón.' ''  22 D. P. R. 191.

No existe, pues, duda alguna de que procede decretar la separación del querellado del ejercicio de su profesión de abogado.  La duda surge con respecto a la separación del querellado de su cargo de notario.

El 31 de enero de 1901 la Asamblea Legislativa de Puerto Rico pasó una ley relativa al ejercicio del notariado y por ella se dispuso que los abogados, ciudadanos de Puerto Rico, que ejercieran la profesión ante los tribunales insulares, podrían desempeñar el cargo de notario, previa prestación de la fianza exigida a los ''actuales notarios.''  Esos actuales notarios eran los que habían obtenido la autorización necesaria para ejercer durante la antigua soberanía y habían continuado en efecto ejerciendo su profesión.  Luego, en 10 de febrero de 1902, la Asamblea pasó otra ley modificando la anterior y en ella ratificó su acuerdo de que los abogados podían ejercer el notariado y dispuso además que el Tribunal Supremo prescribiera y publicara, antes del 1 de julio de

1902, un programa para que aquellas personas que aspiraran a obtener el título de notario, pudieran hacerlo examinándose ante el expresado tribunal. Véanse los estatutos revisados de 1902, págs. 280 y 282.

La ley general vigente sobre la materia es la de 1906, con algunas modificaciones (Compilación de 1911, p. 407). Por su sección 2 se dispone que "además de los que hoy ejercen en esta isla la profesión notarial, y de los que hasta hoy han obtenido título librado por la Corte Suprema de Puerto Rico, sólo podrán ejercer su profesión los abogados que hayan sido admitidos a practicar * * *." Quiere decir que en la actualidad las autorizaciones para ejercer la notaría en esta Isla emanan de tres fuentes, 1ª., leyes de la antigua soberanía; 2ª.,examen, ley de 1902 y 3ª., título de abogado. Las dos primeras fuentes están llamadas a extinguirse con las personas que actualmente disfrutan del privilegio obtenido por virtud de ellas. La última revela la final orientación de la Legislatura, a saber: que para ser notario es necesario poseer 'el título de abogado.

En el presente caso el querellado puede ejercer el notariado bien por virtud de su título de abogado, ya por virtud de su título de notario, adquirido al amparo de la ley de 1902.

Que separada una persona del ejercicio de la abogacía queda separada del del notariado practicado como consecuencia de su título de abogado, es cuestión que ha sido ya resuelta en la afirmativa por este tribunal en los casos de *In Re Figueroa Maestre,* 20 D. P. R. 466, e *In Re Torregrosa,* (pág. 637).

La cuestión de si al separar a una persona del ejercicio de la abogacía en un procedimiento especial iniciado de acuerdo con las prescripciones de la ley "Proveyendo para la organización de una comisión de abogados que examine e informe sobre las condiciones morales de los aspirantes al ejercicio de la abogacía ante los tribunales de la Isla de Puerto Rico, definiendo determinados deberes de los abogados, y para otros

fines, aprobada el 11 de marzo de 1909, puede privársele también de ejercer el notariado cuando esa persona tiene un título independiente de notario obtenido por examen con arreglo a la ley de 1902, es la primera vez que se presenta ante este tribunal.

La citada ley de 1909 se refiere exclusivamente a abogados. El procedimiento que prescribe es únicamente para separar a abogados del ejercicio de su profesión y siendo ello así no nos parece el procedimiento adecuado para privar al querellado de los beneficios que obtuvo al amparo de la ley de 1902. En tal virtud opinamos que nuestra acción en la actualidad debe limitarse a decretar la separación del querellado del ejercicio de la abogacía, sin que haya lugar a tomar resolución alguna con respecto al derecho que el dicho querellado pueda tener para ejercer su profesión de notario basado en el título que obtuviera con arreglo a la ley de 1902.

En tal virtud, procede que este tribunal ordene que el querellado Luis Abella Blanco sea separado del ejercicio de su profesión de abogado, con los demás pronunciamientos de ley, sin que haya lugar dentro de este procedimiento a decretar su separación del ejercicio de su cargo de notario adquirido mediante examen practicado con arreglo a la ley sobre la materia de febrero 10 de 1902.

> *Separado el querellado del ejercicio de la profesión de abogado sin que haya lugar a decretar su separación del ejercicio del notariado.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Aldrey y Wolf.

El Juez Asociado Sr. Hutchison no intervino en este caso.