José Ignacio, Carlos Manuel, Eva Evangelina y Carolina, todos de apellido Díaz Lamoutte, representados por su Defensor Judicial Celestino Iriarte, demandantes y recurrentes, *v.* Eustacia Luciano Maldonado, por sí y asistida de su esposo Ramón Torres, la Sucesión de Ramón Rivera, compuesta de su madre y única heredera Doña Josefa Rivera y Otros, demandados y recurridos.

*Número:* 10463    *Resuelto:* 29 de junio de 1962

836

838

*H. González Blanes,* abogado de los recurrentes; *Luis Blanco Lugo* y *Jorge Souss,* abogados de la recurrida Eustacia Luciano Maldonado; *E. T. Fiddler, José G. González, Tomás I. Nido* y *Ramón Nevárez,* abogados de la recurrida Josefa Rivera.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Santana Becerra y Dávila.

EL JUEZ PRESIDENTE SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

Hace ya medio siglo que Josefa Rivera—por medio de un defensor *ad litem,* por ser ella menor de edad—como madre con patria potestad sobre su hijo Ramón Rivera, nacido el 26 de noviembre de 1908, inició pleito de filiación ante la antigua Corte de Distrito de Guayama contra Ramón Pastor Díaz Molinaris, interesando se declarara al primero hijo natural reconocido del demandado, con quien alegó haber convivido bajo el mismo techo haciendo vida marital como esposa, habiendo nacido de dichas relaciones su hijo Ramón, a quien el demandado no se ocultaba para tratar como hijo y a quien sostenía en sus necesidades al igual que a la madre.

La sentencia filiatoria dictada en dicho pleito fue revocada por este Tribunal en *Rivera* v. *Díaz,* 19 D.P.R. 548 (1913) fundándose en que el juez de instancia había cometido error fundamental al eliminar y no tener en cuenta al resolver el caso, evidencia ofrecida por el demandado en el sentido de que la demandante había tenido relaciones carnales con otros hombres en la época en que su hijo pudo haber sido concebido.[1] Se devolvió el caso ordenándose la celebración de un nuevo juicio.

---

[1] En *Ginés* v. *Escudero,* 58 D.P.R. 561 (1941) este tribunal revocó expresamente el caso de *Rivera* v. *Díaz* en tanto este último caso establecía la doctrina de que evidencia de relaciones de la madre con otros hombres, aun cuando no se hubiese alegado expresamente como materia nueva constitutiva de posición a la demanda, era admisible. Debemos aclarar que

Transcurrió más de un cuarto de siglo sin que la parte actora gestionara el nuevo juicio ordenado por este Tribunal, hasta que el 28 de febrero de 1940, bajo las circunstancias que más adelante habremos de apuntar, se dictó sentencia en dicho caso declarando a Ramón Rivera hijo natural reconocido de Ramón Pastor Díaz Molinaris.

Es indispensable, en orden a una mejor inteligencia de las cuestiones envueltas en el presente recurso—que gira principalmente en torno de la naturaleza de que participen y las consecuencias jurídicas que engendren bajo el regimen

en *Rivera* v. *Díaz* se alegó expresamente por el allí demandado, Ramón Pastor Díaz Molinaris, en la contestación, que Ramón Rivera, el hijo que la demandante Josefa Rivera le atribuía como suyo, era hijo natural de un tal *Ramón Jiménez*, y la prueba a ese efecto fue considerada por el tribunal que conoció de la acción al declarar con lugar la demanda. La evidencia cuya eliminación dio lugar a la revocación en dicho caso giró sobre actos carnales de la demandante con otros hombres, que *en el acto del juicio* y sin haberlos nombrado expresamente en su contestación, ofreció Díaz Molinaris para demostrar que el hijo cuya filiación de él se solicitaba "era o por lo menos tal vez es hijo de la demandante con otras personas, a saber: Juan Ortiz y Félix Garcerán". Refiriéndonos a esta prueba dijimos en el escolio (10) en *Rivera* v. *Sucn. Díaz Luzunaris*, 70 D.P.R. 181, 195–196: "... es significativo que el 12 de diciembre de 1912, Ramón Pastor Díaz Molinari, Pedro G. Goyco y el abogado Luis Abella Blanco, quienes actuaban de mutuo acuerdo, fueron convictos por la Corte de Distrito de Guayama de un delito de conspiración y sentenciados a cumplir un año de cárcel. El delito consistió en que Ramón Pastor Díaz Molinari, puesto de acuerdo con Goyco y su abogado, mediante el pago de $25 a un tal Ramón Jiménez, consiguió que éste, quien nunca había tenido relaciones de clase alguna con Josefa Rivera, se prestara a reconocer como hijo suyo en escritura pública a Ramón Díaz Rivera, siendo éste entonces un menor de edad. En la referida escritura comparecían Ramón Jiménez y Josefa Rivera y expusieron que habían procreado a Ramón Díaz Rivera. Esta escritura fue preparada por dicho abogado, de acuerdo con Ramón Pastor Díaz Molinari. Y prevaliéndose de que Josefa Rivera, aunque podía firmar no sabía leer ni escribir, la engañaron diciéndole que por aquella escritura Ramón Pastor Díaz Molinari le estaba reconociendo su hijo, todo lo cual se hizo con el fin de que ella la firmara y de ese modo privar al menor de su derecho a establecer su *status* como hijo natural reconocido de Ramón Pastor Díaz Molinari. Bajo ese engaño la madre firmó la escritura. Esa actuación combinada entre Ramón Pastor Díaz Molinari, Goyco y el referido abogado, fue la que dio lugar a la sentencia por conspiración, la cual fue confirmada por este Tribunal. *Pueblo* v. *Díaz* et al., 22 D.P.R. 191, *In re Abella*, 25 D.P.R. 744."

de nuestro Código Civil, disposiciones de última voluntad contenidas en un testamento cerrado bajo el cual reclaman sus derechos los aquí demandantes—una exposición detallada de los hechos acaecidos y los trámites habidos desde el fallecimiento del testador.

## I

Ramón Pastor Díaz Molinaris falleció en Ponce el 4 de noviembre de 1939. Dos días antes de su muerte—el 2 de noviembre—otorgó testamento cerrado, el cual se ordenó protocolizar por auto dictado el 18 del mismo mes y año por la antigua Corte de Distrito del Distrito Judicial de Ponce, (²) en el protocolo del Notario Frank Torres de dicha ciudad, quien llevó a cabo dicha protocolización con fecha 22 del propio mes.

El 21 de noviembre de 1939, Ignacio Díaz Luzunaris, en su carácter de único hijo del testador, habido en anterior matrimonio de éste con Carolina Luzunaris, inició pleito en el mismo tribunal interesando la nulidad del referido testamento. Dirigió su demanda contra Eustacia Luciano Maldonado como viuda del causante y legataria y madre adoptiva de la menor Margarita Luciano, otra legataria; contra Antonio Argüelles, José Antonio Mera Texidor, Irene Texidor de Mera, Omega Vega, Vicente Palés Matos, Juliá María Feliciano, todos como legatarios, y contra Domingo Crescioni, Miguel Angel Crescioni Rodríguez y Jorge Luciano Maldonado, en su doble carácter de legatarios y albaceas.

(²) En las diligencias judiciales sobre apertura del referido testamento que tuvieron lugar el 15 de noviembre de 1939, se presentó e identificó otro anterior de igual carácter otorgado por el mismo testador el 31 de octubre de ese mismo año, con relación al cual el Tribunal dispuso:

"Terminadas las diligencias. En cuanto al anterior, debe quedar unido al récord, o sea, el testamento que llevaba fecha treinta y uno de octubre de mil novecientos treinta y nueve. Que quede en el expediente como perpetua memoria, ordenándose que dicho testamento se cierre dentro del sobre y se guarde en la caja de hierro de la Secretaría."

En las primeras tres causas de acción de su demanda(³) alegó, en síntesis, que el testamento otorgado el 2 de noviembre de 1939 por su padre Ramón Pastor Díaz Molinaris era nulo e ineficaz por ser producto del dolo, la violencia y la coacción mental ejercitada por la codemandada Eustacia Luciano Maldonado y su hermano Jorge sobre el testador—quien por su condición estaba imposibilitado de poder leer ni coordinar normalmente sus ideas—mediante ciertos procedimientos fraudulentos y engañosos que describió en su demanda, habiendo así actuado con el deliberado propósito de beneficiar a Eustacia Luciano Maldonado y lesionar y perjudicar los derechos del demandante como heredero forzoso y único hijo del causante, impugnando asimismo los legados y demás disposiciones de dicho testamento, por vicios intrínsecos en su otorgamiento y por no haber sido citado el demandante para el acto de las diligencias de apertura del mismo.

## II

El 28 de febrero de 1940, después de más de veintisiete años de inactividad en el pleito original instado por Josefa Rivera a nombre de su hijo Ramón en la antigua Corte de Distrito de Guayama, se dictó sentencia en dicho pleito declarando a Ramón Rivera hijo natural reconocido de Ramón Pastor Díaz Molinaris, quien ya fallecido fue sustituído como parte demandada por su hijo legítimo Ignacio Díaz Luzunaris y su viuda Eustacia Luciano Maldonado. En dicho pleito no se incluyeron como demandados a los hijos de Ignacio Díaz Luzunaris.

## III

El propio día 28 de febrero de 1940, mediante escritura otorgada en esa fecha ante notario, el hijo natural celebró contrato de transacción de derechos hereditarios con su her-

---

(³) En una cuarta causa de acción impugnó el matrimonio contraído por el testador con la codemandada Eustacia Luciano Maldonado.

mano Ignacio, en virtud del cual recibió la cantidad de $10,000 en pago total de su participación en la herencia de su padre Ramón Pastor Díaz Molinaris, calculada en unos $600,000.

IV

El 13 de marzo de 1940, Ignacio Díaz Luzunaris radicó demanda complementaria en el pleito sobre nulidad de testamento por él iniciado en Ponce el 21 de noviembre de 1939. Solicitó que en virtud de la sentencia de filiación dictada el 28 de febrero de ese año en Guayama, por la cual se declaraba a Ramón Rivera hijo natural reconocido de Ramón Pastor Díaz Molinaris, se declarara con lugar dicha demanda complementaria "y en su consecuencia nulo y sin ningún valor ni efecto el testamento de dicho don Ramón Pastor Molinaris [sic] por corresponder al referido hijo natural todo el tercio libre de disposición" y que se dictara sentencia declarando herederos del causante, a él como su hijo legítimo, a Ramón Díaz Rivera como su hijo natural reconocido y a la viuda Eustacia Luciano Maldonado en la cuota usufructuaria.

En esa misma fecha la viuda de Ramón Pastor Díaz Molinaris y los albaceas testamentarios Jorge Luciano Maldonado, Domingo y Miguel Angel Crescioni Rodríguez se allanaron a la súplica de la demanda complementaria en la forma pedida y el día 18 del mismo mes se dictó sentencia de conformidad con la misma.

V

El propio 13 de marzo de 1940, por escritura sobre transacción otorgada por Eustacia Luciano Maldonado e Ignacio Díaz Luzunaris, la primera cedió a éste su participación en los gananciales de su matrimonio con Ramón Pastor Díaz Molinaris, su usufructo viudal, y "cualquier otro derecho, interés, participación, beneficio o acción que pudiera corresponderle en la herencia" de su esposo fallecido "tanto como heredera, así como también como acreedora o por cualquier otro concepto."

## VI

El 26 de enero de 1945 Josefa Rivera—como tutora de Ramón Díaz Rivera, previamente declarado incapaz para administrar sus bienes por razón de locura—inició pleito contra Ignacio Díaz Luzunaris y Eustacia Luciano Maldonado para anular la escritura otorgada por su hijo e Ignacio el 28 de febrero de 1940 y la otorgada por la viuda e Ignacio el 13 de marzo del mismo año.

En *Rivera* v. *Sucn. Díaz Luzunaris*, 70 D.P.R. 181 (1949) este Tribunal confirmó, aunque por fundamentos distintos a los expresados por el tribunal inferior, la sentencia que declaró con lugar la demanda anulando el contrato de transacción de derechos hereditarios celebrado entre Ignacio Díaz Luzunaris y su hermano Ramón.[4] Por haber fallecido Ignacio durante el transcurso de dicho pleito, fue sustituído como parte demandada en el mismo por su sucesión.

## VII

La presente acción fue instada por José Ignacio, Carlos Manuel, Evangelina y Carolina Díaz Lamoutte, representados por su defensor judicial, como herederos directos que reclaman ser de su abuelo Ramón Pastor Díaz Molinaris, bajo ciertas cláusulas testamentarias[5] que más adelante habremos de examinar, de acuerdo con las cuales sostiene que se creó a su favor una sustitución fideicomisaria con condición suspensiva en cuanto al tercio de mejora del caudal relicto al fallecimiento del testador, y a la mitad del tercio de libre disposición que fue legado en nuda propiedad a la viuda del causante, adquiriendo por lo tanto los demandantes, desde ese momento, derechos hereditarios como miembros de la sucé-

---

[4] La demanda en cuanto al contrato celebrado entre Ignacio y la viuda fue declarada sin lugar por el tribunal inferior y la sentencia no fue apelada.

[5] Las cláusulas Octava y Novena del testamento sólo mencionan a tres de los nietos del testador: José Ignacio, Carlos Manuel y Evangelina. Carolina no está incluída.

sión de aquel, conforme a los artículos 713 y 728 de nuestro Código Civil. La acción fue dirigida contra la viuda del testador, Eustacia Luciano Maldonado; contra Josefa Rivera como madre y única heredera de Ramón Rivera o Ramón Díaz Rivera; contra los albaceas testamentarios, y contra varios legatarios y otras personas que adquirieron por compra propiedades pertenecientes al caudal hereditario luego de fallecido el testador.

En virtud de la condición de herederos que reclaman ostentar bajo el referido testamento, los demandantes impugnan en esta acción (1) la validez de la sentencia de filiación dictada por la antigua Corte de Distrito de Guayama el 28 de febrero de 1940, por la que se declaró hijo natural reconocido del testador a Ramón Rivera, por cuanto no se les unió como demandados, siendo ellos parte necesaria como integrantes de la sucesión del causante—originalmente demandado en dicho pleito de filiación y sustituído en el mismo, a su muerte, únicamente por su hijo legítimo Ignacio Díaz Luzunaris y su viuda Eustacia Luciano Maldonado; (2) la validez de la sentencia dictada el 18 de marzo de 1940 por la antigua Corte de Distrito de Ponce, declarando nulo e ineficaz el testamento otorgado por Ramón Pastor Díaz Molinaris el 2 de noviembre de 1939, en el pleito instado por Ignacio Díaz Luzunaris contra la viuda del testador y los albaceas testamentarios, sin que se incluyera como demandados a los aquí demandantes, no obstante ser ellos parte necesaria en dicha acción; (3) la validez de la declaración de herederos hecha en dicha sentencia a favor del hijo legítimo del causante, Ignacio Díaz Luzunaris, del hijo natural reconocido por virtud de la sentencia de filiación primeramente mencionada, Ramón Díaz Rivera, y de la cónyuge viuda Eustacia Luciano Maldonado, ésta en cuanto a la cuota viudal usufructuaria; (4) la validez de la escritura otorgada el 13 de marzo de 1940, por la cual Ignacio Díaz Luzunaris adquirió los derechos de Eustacia Luciano Maldonado en la sucesión de Ramón Pastor

Díaz Molinaris. Consecuentes con lo anterior solicitan se reconozcan sus derechos hereditarios, según se derivan del testamento aludido, y se reivindiquen los bienes hereditarios que les corresponden, disponiendo su reintegro al caudal hereditario, junto a todos los bienes de la herencia, para que se hagan las adjudicaciones provistas en dicho testamento, y que se anulen todos los convenios, transacciones y decretos relacionados con la restitución y entrega de los bienes y propiedades que les correspondan, y daños y perjuicios.

La demandada Josefa Rivera, en su contestación, defensas especiales, reconvención y contrademanda, sostiene en síntesis que la condición de su hijo Ramón Rivera, como hijo natural de Ramón Pastor Díaz Molinaris, quedó adjudicada por la sentencia de filiación de la Corte de Distrito de Guayama de 28 de febrero de 1940; que dicho Ramón Pastor Díaz Molinaris murió intestado por no haber otorgado testamento válido alguno, siendo nula e inexistente la orden sobre protocolización del testamento de 2 de noviembre de 1939 dictada por la Corte de Distrito de Ponce en el procedimiento especial seguido a ese fin; que por el referido documento—que no era tal testamento—no se instituyó a los demandantes como herederos ni se les confirió legado alguno, ni aun sujeto a condición suspensiva, ni se creó sustitución fideicomisaria alguna, no siendo por lo tanto los demandantes partes necesarias o con interés alguno en el pleito de filiación en que su hijo obtuvo sentencia favorable como hijo natural reconocido de Ramón Pastor Díaz Molinaris o en el pleito de nulidad de testamento.

Sostiene, además, que el testamento es nulo, independientemente de la nulidad decretada por la Corte de Distrito de Ponce—la cual sostiene que es *res judicata* en cuanto a los demandantes—por varios vicios o causas de nulidad de que adolece dicho testamento.

La contienda en el tribunal a quo quedó trabada en virtud de moción para que se dictara sentencia sumaria, acompañada

de varios documentos y declaraciones juradas, interpuesta por la demandada Josefa Rivera, y de moción de desestimación, acompañada también de varios documentos, interpuesta por la codemandada Eustacia Luciano Maldonado, y de oposición de los demandantes acompañada de contradeclaración del defensor judicial.

El tribunal de instancia dictó sentencia declarando sin lugar la demanda por considerar nulo el testamento otorgado el 2 de noviembre de 1939 por Ramón Pastor Díaz Molinaris y porque, aun asumiendo la nulidad de la sentencia de la Corte de Distrito de Ponce que anuló el mismo, los demandantes, hijos de Ignacio Díaz Luzunaris, no tenían el concepto de herederos bajo las disposiciones bajo las cláusulas testamentarias Octava y Novena, y por otros fundamentos que de momento es innecesario mencionar.

Los planteamientos hechos en su recurso ante este tribunal por los demandantes requieren que examinemos primero las cláusulas testamentarias en que fundan su acción, pues de haberse instituído por el testador una sustitución fideicomisaria en favor de sus nietos, preciso sería entonces examinar su naturaleza y las consecuencias jurídicas que pudieran tener en las diversas actuaciones judiciales que aquí impugnan, para de ahí pasar a considerar los derechos de las partes en el presente pleito y finalmente la corrección de la sentencia dictada.

### Las Cláusulas Testamentarias Pertinentes

Después de disponer el testador por la Sexta de las cláusulas testamentarias que al ocurrir su fallecimiento "la tercera parte de todos sus bienes, después de satisfacer todas las deudas y gravámenes existentes, pase a su legítimo hijo Ignacio Díaz Luzunaris, en nuda propiedad [sic], y hacer por la Séptima un legado de cosa determinada del tercio de libre disposición a su viuda, por la Octava y Novena de dichas cláusulas dispuso:

"..................... OCTAVA .....................

....Es asimismo la última voluntad del testador suscribiente que su viuda tendrá el usufructo, goce, rentas y disfrute del tercio de todos sus bienes destinado por la ley a constituír la mejora, conservando su hijo Ignacio Díaz Luzunaris la nuda propiedad, hasta que por el fallecimiento de la viuda se consolide en él el dominio. Si falleciere su hijo Ignacio Díaz Luzunaris, antes que su viuda, y ésta no haya contraído segundas nupcias, ella seguirá gozando de las rentas y usufructos de estos bienes, hasta que por su muerte se consolide el dominio de los mismos en los tres hijos legítimos de su hijo Ignacio Díaz Luzunaris. Idem dispone el testador, que a su fallecimiento sus albaceas transfieran y pasen a título de la mitad de gananciales a su legítima esposa Eustacia Luciano Maldonado de Díaz, y además que la mitad del tercio de libre disposición de todos sus bienes terrenales, pase también a su legítima viuda doña Eustacia Luciano Maldonado de Díaz, en nuda propiedad para que los use, goce y disfrute y perciba las rentas, a su mejor leal, saber y entender durante su viudez, sujeto a las disposiciones de la cláusula siguiente:

..................... NOVENA .....................

....Dispone el testador que si su viuda, doña Eustacia Luciano Maldonado de Díaz pasare a segundas nupcias, estará obligada a reservar o devolver a los tres nietos legítimos del testador— hijos legítimos de Ignacio Díaz Luzunaris; y a don Jorge Luciano Maldonado, su cuñado; a Antonio Argüelles de Argüelles, hijo de su hermana Hortensia Díaz, residentes en España; a Irene Texidor de Mera, residente en San Juan de Puerto Rico, y a Jorge Antonio Mera, por partes iguales, además de los legados con que han sido éstos instituídos, la nuda propiedad de todos los bienes que haya adquirido por este testamento; pero no su mitad de gananciales, según la cláusula anterior."......

Por la cláusula Décimo Séptima instituyó como legataria, bajo ciertas condiciones, a Margarita Luciano Maldonado, en el remanente del tercio de libre disposición, después que fueran satisfechos varios legados de cantidad ascendentes a $14,500 que por otras cláusulas dispuso a favor de distintas personas; consignando que si las condiciones impuestas a la referida legataria no fuesen por ella cumplidas "dicho legado

revertirá en nuda propiedad a manos de o a los nietos legítimos del testador, hijos de Ignacio Díaz Luzunaris."

## Alcance de las Cláusulas testamentarias

Las cláusulas Octava y Novena que hemos transcrito—al igual que otras del testamento que nos ocupa—no pueden considerarse como un modelo de la mejor construcción jurídica, mas no por eso estamos dispensados de buscar en ellas la verdadera voluntad del testador. ■

Por la cláusula Octava, (6) el testador, conforme al derecho legitimario de la viuda como heredera forzosa—Art. 736 de nuestro Código Civnl—dispuso que ésta tendría el usufructo (le agregó *goce, rentas* y *disfrute*) del tercio de todos sus bienes "destinado por la ley a constituir la mejora, conservando su hijo Ignacio Díaz Luzunaris la nuda propiedad hasta que por el fallecimiento de la viuda se consolide en él el dominio." Sin embargo, a pesar de la identidad de expresión entre la parte transcrita de dicha cláusula Octava y el texto del Artículo 761 de nuestro Código, no estaba el testador meramente recitando el derecho legitimario de

---

(6) Los demandantes sostienen que por virtud de las disposiciones de la cláusula Octava el testador creó una sustitución fideicomisaria a su favor, sujeta a una condición suspensiva: la muerte de Ignacio antes que su viuda; y que siendo ello así, revisten la condición de herederos directos del testador, ya que de conformidad con el artículo 728 del Código Civil, tal condición suspensiva "no impide al heredero o legatario adquirir sus respectivos derechos y transmitirlos a sus herederos, aún antes de que se verifique su cumplimiento."

Igual contención hacen en cuanto a la cláusula Novena—en relación con el último párrafo de la Octava—sobre la mitad del tercio de libre disposición, el cual dispuso el testador que pasara a su viuda "en nuda propiedad para que los use, goce y disfrute y perciba las rentas a su mejor, leal, saber y entender durante su viudez", pero sujeto a la condición de que si pasaba a segundas nupcias—lo que en efecto ocurrió—estaría obligada "a reservar o devolver a los tres nietos legítimos del testador—hijos legítimos de Ignacio Díaz Luzunaris", y a otras personas también designadas como legatarias, "la nuda propiedad de todos [sic] los bienes que haya adquirido por este testamento".

La condición de que permaneciera en estado de viudez, desde luego, podía imponerla el testador en cuanto a la mitad del tercio libre ya que no se trataba aquí de la legítima de la viuda y lo permite el artículo 722.

la viuda, en cuanto a su cuota usufructuaria, y el derecho legitimario de su hijo Ignacio, en cuanto a la nuda propiedad, ([7]) que les reconoce el citado artículo. Seguidamente dispuso que "Si falleciere su hijo Ignacio Díaz Luzunaris, antes que su viuda, y ésta no haya contraído segundas nupcias, ella seguirá gozando de las rentas y usufructos de estos bienes *hasta que por su muerte se consolide el dominio de los mismos en los tres hijos legítimos de su hijo Ignacio Díaz Luzunaris.*" (Subrayado nuestro.) ■

Desde luego que la condición impuesta por el testador para la continuación del disfrute de su usufructo por la viuda, de que una vez muerto su hijo Ignacio, "ésta no haya contraído segundas nupcias", debe tenerse por no puesta, por ser contraria a la ley—artículo 721—pues siendo la viuda heredera forzosa—artículo 736—y constituyendo el usufructo sobre el tercio de los bienes destinados a la mejora, su legítima—Arts. 761 y 762—no podía condicionarse su disfrute, conforme lo previene el artículo 741. 6 Manresa, *Código Civil* (7ma. Ed.) 418; 14 Scævola, *Código Civil* (4ta. Ed.) 400.

¿Cuál es el alcance, pues, de las disposiciones testamentarias arriba transcritas? ■

Conviene apuntar seguidamente que conforme al artículo 751 ([8]) de nuestro Código Civil el testador hubiera podido

---

([7]) Hacemos referencia en esta opinión, como es natural, al estado del derecho sucesorio vigente a la fecha de la muerte del testador.

Bajo el estado de la legislación aplicable al caso, la legítima de los hijos y descendientes legítimos, la constituían las dos terceras partes del caudal relicto—Art. 737 del Código Civil. Por disposición del propio artículo citado, no obstante, el padre o la madre podían disponer de una de las dos terceras partes destinadas a la legítima, para aplicarla como mejora "a favor de alguno o algunos de sus hijos o descendientes legítimos."

([8]) Art. 751—"El padre o la madre podrán disponer a favor de alguno o algunos de sus hijos o descendientes de una de las dos terceras partes destinadas a legítima.

"Esta porción se llama mejora.

"No podrán imponerse sobre la mejora otros gravámenes que los que se establezcan en favor de los legitimarios o sus descendientes."

disponer a favor de sus nietos, los hijos de Ignacio, del tercio de mejora, instituyéndoles herederos directos suyos para el disfrute de los bienes a su muerte, aun en vida de Ignacio. 96 *Jurisprudencia Civil* 924; Royo, *Derecho Sucesorio* 200–1; 6 Manresa, *Código Civil* (7ma. Ed.) 486–7; 14 Scævola, *Código Civil* (4ta Ed.) 512–3; 4 Castán, *Derecho Civil* (6ta. Ed.) 532–5; 2 Pedreira, *Código Civil* 226; González Rebollar, *Sobre mejoras a los nietos en vida de su padre*, 104 Rev. Gral. de Leg. y Jurisp. 409; el mismo autor en 105 Rev. Gral. de Leg. y Jurisp. 5; Ferrara, *Concepto del Testamento—La Legítima y la Mejora*, en Revista de Derecho Privado 1928, 139; 3 Clemente de Diego, *Instituciones de Derecho Civil Español*, 254. De igual forma podía imponer sobre la porción de mejora correspondiente a la legítima de Ignacio, una sustitución fideicomisaria, pura o condicional, a favor de sus nietos, bajo la autoridad del propio precepto citado y del artículo 711.(⁹)

La sustitución fideicomisaria puede definirse, conforme al artículo 710 de nuestro Código Civil, como una disposición testamentaria "en cuya virtud se encarga al heredero que conserve y trasmita a un tercero el todo o parte de la herencia." 3 Clemente de Diego, ob. cit. 163. Los caracteres o requisitos esenciales de esta sustitución, siguiendo los diversos preceptos del Código y atendiendo a su naturaleza, han sido así establecidos por la jurisprudencia y la doctrina:

1—Doble llamamiento hecho por el testador sobre los mismos bienes en favor de dos personas llamadas a recogerlos sucesivamente, la una después de la muerte de la otra.

2—Obligación de conservar y trasmitir los bienes.

3—Orden sucesivo establecido por el testador en sus llamamientos, según el cual se debe entender que el fideicomisario viene a la herencia en el momento de la muerte

---

. (⁹) Art. 711—"Las sustituciones fideicomisarias nunca podrán gravar la legítima. Si recayeran sobre el tercio destinado a la mejora, sólo podrán hacerse en favor de los descendientes."

del primer llamado. 218 *Jurisprudencia Civil* 7 (Pub. Rev. Gral. de Leg. y Jurisp.) ; 3 Clemente de Diego, *ob. cit.* 166–7; Royo, *ob. cit.* 158–9; 4 Castán, *ob. cit.* 463; 5 Espín Cánovas, *Derecho Civil Español* 217; 2 Roca Sastre, *Estudios de Derecho Privado* 36–37; Traviesas, *Sustituciones Hereditarias*, en Revista de Derecho Privado (1927) p. 414 *et seq.;* 1 Coello, *Sucesiones*, 608 *et seq.;* 1 Santamaría, *Comentarios al Código Civil*, 765 *et seq.;* 2 Planas y Casals, *Derecho Civil Español* 45; 3 Gerónimo González, *Estudios de Derecho Hipotecario y Derecho Civil*, 377; 5 Puig Peña (Vol. I) *Tratado de Derecho Civil Español* 492 *et seq.;* 2 Pedreira, *ob. cit.* 171 *et seq.;* 5 Valverde, *Tratado de Derecho Civil Español* 193 *et seq.;* 6 Manresa, *ob. cit.* 205 *et seq.* ■

La cláusula Octava, en la parte relativa a la disposición sobre el tercio de mejora, cumple con los requisitos esenciales que deben concurrir para que surja la figura jurídica "sustitución fideicomisaria" sujeta a la condición suspensiva de la premoriencia de Ignacio a la viuda.

Contiene dicha cláusula (1) un *doble llamamiento:* uno a favor de Ignacio, como legitimario a quien por ley le correspondían los dos tercios de la legítima larga; y un segundo llamamiento (expreso) a favor de los hijos de Ignacio si éste premoría a la viuda del testador; (2) un *orden sucesivo*, esto es, que los llamados en segundo término advendrían a la herencia después y con motivo de la muerte del primeramente llamado, si se cumplía la condición; y (3) obligación expresa de *conservar* Ignacio—con su correspondiente consecuencia de *prohibición* de enajenar—la nuda propiedad de los bienes del tercio de mejora. Si ocurría su fallecimiento antes que el de la viuda, al deceso de ésta se consolidaría en los llamados en segundo término, los nietos del testador, el título de dichos bienes en pleno dominio. ■

. Desde luego que no estamos ante una sustitución fideicomisaria pura, y sí condicional, determinado ese carácter por la incertidumbre de la ocurrencia de un suceso casual que no tenía necesariamente que devenir: la muerte de

Ignacio antes que la de la viuda. En la sustitución fideicomisaria condicional la restitución de los bienes sólo puede tener lugar cuando ocurre el acontecimiento que integra la condición, 5 Puig Peña (Vol. I) *ob. cit.* 491; La Cruz Berdejo, *Estudios de Derecho Civil* 619-20. ▮

Si bien las sustituciones fideicomisarias no han de surtir efecto si no se hacen de manera expresa, ya dándoles ese nombre o ya imponiendo al sustituído la obligación terminante de entregar los bienes a un segundo heredero—Art. 714—basta para determinar su existencia que su ordenación se deduzca de la forma, modo y término en que sea expresada la voluntad del testador, 5 Puig Peña (I), *ob. cit.* pág. 493; 46 Jurisprudencia Civil 645, 667 (Pub. Rev. Gral. Leg. y Jurisp., 1954) para que se entiendan ordenadas. Estando aquí la sustitución fideicomisaria condicionada a la premoriencia de Ignacio a la viuda, la restitución de los bienes a los nietos dependía precisamente de un suceso que podía o no acaecer en la forma indicada, pero que de ocurrir así, determinaba por sí mismo la restitución a los nietos del tercio de mejora en nuda propiedad que el testador había dispuesto que Ignacio conservara—y que éste hubiera incondicionalmente adquirido para él en pleno dominio en la eventualidad de que la viuda le premuriera. ▮

Igualmente están presentes los caracteres esenciales de la sustitución fideicomisaria condicional en las disposiciones relativas a la mitad del tercio libre que por la propia cláusula Octava, condicionada por la Novena, dejó ([10]) el testador a su viuda.([11])

---

([10]) De acuerdo con el artículo 609 de nuestro Código Civil, la viuda, bajo las anteriores cláusulas—contrario al criterio expresado por el tribunal a quo—sería una heredera y no una legataria, ya que recibiría en el tercio libre una parte alicuota de la herencia. 5 *Manresa* 333-4.

([11]) Como sabemos, el testador dispuso por la cláusula Octava que la mitad del tercio libre de su herencia, pasase a su esposa, "en nuda propiedad para los use, goce y disfrute y perciba las rentas", pero con la condición, impuesta por la Novena, de que si contraía segundas nupcias, revertirán los bienes a sus tres nietos, y a otras personas señaladas. Interpretando esta última cláusula, la sala de instancia se expresa: "Tam-

### Derechos de los Fideicomisarios Condicionales

Las sustituciones fideicomisarias aquí constituidas lo fueron bajo condiciones suspensivas. Los nietos tendrían derecho al tercio de mejora si el hijo legítimo premoría a la viuda del testador, y a la mitad del tercio libre si la viuda contraía segundas nupcias. Ambas eventualidades eran futuras e inciertas—artículo 1066 del Código Civil. No eran sucesos que necesariamente tenían que ocurrir. Ignacio podía o no morir antes que la viuda. Si la viuda premoría a Ignacio no tenía lugar la condición impuesta y nada adquirirían los nietos del causante. La viuda podía o no contraer segundas nupcias. Si no lo hacía tampoco tendría lugar la condición para que naciera el derecho de aquellos. ▮

Bajo las anteriores condiciones, los derechos de los nietos *en la sucesión* de su abuelo no podían surgir al momento y por el solo hecho de la muerte del testador. La doctrina y la jurisprudencia española sostienen que el artículo 784 del Código Civil español, equivalente al 713 del nuestro, al disponer que el fideicomisario adquirirá derecho a la sucesión desde la muerte del testador aunque muera antes que el fiduciario y que el derecho de aquél pasará a sus herederos, "sólo es aplicable a las sustituciones fideicomisarias *puras*,

---

poco son los demandantes herederos de su abuelo, Pastor Díaz Molinaris, bajo las disposiciones de la cláusula Novena del testamento. La redacción de esta disposición testamentaria indica claramente que el testador intentó darle efecto a las disposiciones del artículo 923 del Código Civil que imponen al cónyuge viudo la obligación de reservar a favor de los descendientes del premuerto aquellos bienes que recibe por título lucrativo o legado en la sucesión de éste. Un reservatorio evidentemente no es un heredero.

"Siendo Eustacia Luciano Maldonado una legataria bajo los términos de la Cláusula Novena, ya que es instituída en el tercio libre de libre disposición, los demandantes y demás beneficiarios sustitutos no pueden tener otro carácter que el de que la persona originalmente instituída."

Fue errónea esta conclusión del tribunal de instancia. No entra en juego aquí la institución de la reserva, la cual, bajo el artículo 923 de nuestro Código Civil, sólo puede advenir a la vida del derecho si existen hijos o descendientes comunes del primer matrimonio del viudo o viuda que luego contrae nuevas nupcias.

pero no a las condicionales, en las que ningún derecho adquiere ni puede transmitir el instituído bajo condición, mientras ésta no se cumpla, aunque haya sobrevivido al testador, según se desprende del artículo 759 (688 nuestro) en relación con el 791 (720 nuestro) aplicables ambos a toda clase de instituciones de herederos y legados condicionales." *Sentencias del Tribunal Supremo de España* de 9 de julio de 1910; de 9 de abril de 1928; de 13 de marzo de 1942 y de 20 de octubre de 1954. 5 Borrell y Soler, *Derecho Civil Español* 145; 4 Castán, *ob. cit.* 471; 3 Gerónimo González, *ob. cit.* 384; 3 Espín, Cánovas *ob. cit.* 220; 5 Puig Peña (I) *ob. cit.* 492; 2 Pedreira *ob. cit.* 171; Clemente de Diego, *ob. cit.* 175.

Tampoco entra aquí en juego el artículo 728 (799 español) que establece que "La condición suspensiva no impide al heredero o legatario adquirir sus respectivos derechos y transmitirlos a sus herederos, aún antes de que se verifique su cumplimiento." La antinomia entre este artículo y el 688 (759 español) que dispone que "El heredero o legatario que muera antes de que la condición se cumpla, aunque sobreviva al testador, no transmite derecho alguno a sus herederos" —de la que se han ocupado extensamente los comentaristas del derecho civil— ([12]) ha sido resuelta por la jurisprudencia española, acorde con la gran mayoría de la interpretación doctrinal, en el sentido de que en el artículo

([12]) 6 (1) Sánchez Román, Derecho Civil, 2da. Edición, 613 *et seq.*; 4 Castán *ob. cit.* 402; 13 Scaévola, *ob. cit.* 867 *et seq.*; Díaz Cruz, *Los Legados*, 384; 2 Casso y Viñas, *Derecho Civil Español*, 482 *et seq.*; Traviesas, *Sobre Derecho Hereditario*, en Revista de Derecho Privado 1921, 2da. Ed. 14; 3 Clemente de Diego *ob. cit.* 129 *et seq.* 124; Royo Martínez *ob. cit.* 141 *et seq.* Isabal, *La doctrina de las Condiciones en Derecho y los Artículos 759 y 799 del Código Civil*, en Revista de Derecho Privado, 1926. Véase, además, para un completo estudio de los diversos criterios expuestos por la doctrina en el debate sobre la prevalencia de uno u otro artículo. Joaquín Sopena: *"La Transmisibilidad de los derechos condicionales y la voluntad del testador"*, en 197 Revista General de Legislación y Jurisprudencia, págs. 7 a 51.

799—728 nuestro— "no se emplea la palabra condición en sentido estricto, sino que se hace referencia a un término o plazo, cuyo vencimiento se determina por el fallecimiento de una persona que necesariamente ha de suceder, aunque se ignore cuándo, y cuyo efecto, mientras el vencimiento llega, es suspender *la efectividad* de la institución, pero sin impedir *la creación de derechos* a favor del instituído, transmisibles a sus herederos desde el fallecimiento del testador; pero cuando el derecho no se hace depender del término o plazo determinado por el hecho del fallecimiento de una persona, *sino de la supervivencia a aquella,* resulta aplicable a la situación así condicionada el artículo 759 (688 nuestro) cuya preferente aplicación al 799 por su conformidad con el 1114 (1067 nuestro) se halla reconocida por la sentencia de 17 de marzo de 1934." Esta prevalencia rige igualmente cuando se trata de sustituciones fideicomisarias condicionales. Sentencias de 17 de marzo de 1934; de 4 de marzo de 1952; 20 de octubre de 1954; 6 de diciembre de 1957; 26 de enero de 1957 y 28 de febrero de 1959. Véanse además, sentencias de 1ro de febrero de 1910; 9 de julio de 1910; 1ro de febrero de 1912; 29 de enero de 1916; 29 de diciembre de 1917; 9 de julio de 1917 y 9 de abril de 1928.

Bajo la Octava de las cláusulas testamentarias que nos ocupan, el nacimiento del derecho de los demandantes, nietos del testador, no se hizo depender del término o plazo que hubiere de tardar en fallecer su padre, sino de la condición de que éste premuriera a la viuda del causante; y bajo la Novena, no de cuándo la viuda habría de contraer nuevas nupcias, sino de si en efecto las contraía o no. Tales situaciones pertenecen a la esfera del artículo 688, bajo el cual los nietos no adquirieron derecho alguno por el mero hecho de la muerte del testador. Su derecho estaba condicionado a sucesos casuales, inciertos, y no podía adquirir vida hasta que las condiciones, que no tenían plazos fijos, se cumplieran.

## La sentencia de filiación

El viejo pleito iniciado en 1911, revivido tras 27 años de inactividad, produjo una sentencia filiatoria a favor del hijo natural. La viuda del testador y el hijo legítimo, Ignacio, fueron sustituídos como demandados en lugar del causante. No habiéndose cumplido aún la condición establecida por el testador de la premoriencia de Ignacio, ni la de nuevas nupcias de la viuda, no habían adquirido aun los nietos derechos alguno a la sucesión de su abuelo, y por lo tanto, no tenían que ser unidos como parte demandada. En consecuencia, la sentencia filiatoria de Guayama prevalece válidamente con todas consecuencias jurídicas de su validez.

## La sentencia que anuló el testamento

La acción de nulidad de testamento la inició Ignacio originalmente, como dejamos antes expuesto, fundada en vicios esenciales en el otorgamiento del testamento de su padre. Fue luego de dictada la sentencia filiatoria a favor del hijo natural que, a través de una demanda complementaria fundada en la preterición de éste, pidió la nulidad del testamento y que se declarara abierta la sucesión abintestato del causante. ▪

No tenemos que resolver aquí si los nietos del testador, por razón de las sustituciones fideicomisarias condicionales de las cláusulas Octava y Novena, tenían derecho a ser citados en la acción plenaria de nulidad de testamento originalmente instada por Ignacio, para que defendieran la expectativa incierta de sus derechos condicionales. Esa causa de acción nunca fue litigada. La sentencia que se dictó lo fue a base de la demanda complementaria, fundada en una causa de acción distinta—preterición del hijo natural—cuyas consecuencias jurídicas son también distintas. El efecto de la preterición de un heredero forzoso en línea recta, fuere

legítimo o natural, ([13]) es la nulidad de la institución de heredero, que no debe ser confundida con la nulidad del testamento, Royo Martínez, *Derecho Sucesorio Mortis Causa* 245, con las salvedades que establece el artículo 742. ( ([14])

En cuanto a la demanda complementaria, los nietos no tenían que ser citados, por dos razones: (1) Porque decretada la filiación del hijo natural, su preterición en el testamento tenía el efecto de anular la institución de herederos hecha a favor de la viuda en la mitad del tercio de libre disposición—que como veremos más adelante correspondía íntegro por concepto de legítima al hijo natural—así como todos los legados con cargo al mismo, por ser inoficiosos, y por ende, desapareció *ipso jure* cualquier posibilidad o expectativa de derecho de los demandantes a ser llamados como fideicomisarios sustitutos condicionales en la referida mitad del tercio libre y, en parte, de dichos legados; (2) Porque la preterición del hijo natural, en derecho, si bien tenía el efecto de anular la institución de heredero, según hemos apuntado, dejaba a salvo, por no ser inoficiosa, la sustitución fideicomisaria condicional constituída a favor de los nietos sobre el tercio de mejora, según los propios términos del artículo 742. En consecuencia, la sentencia dictada a base de la demanda complementaria, aun cuando decretó la nulidad del testamento en su totalidad y abrió la sucesión intestada, no puede tener otras consecuencias jurídicas que las que la ley determina, o sea, la nulidad de la institución de herederos, y desde luego de los legados; debiendo considerarse válida y en todo su vigor la sustitución fideicomisaria condicional constituída sobre el tercio de mejora. Fallecido

([13]) Sentencias del Tribunal Supremo de España de 17 de junio de 1908; 27 de febrero de 1909; 11 de marzo y 22 de mayo de 1950.

([14]) Art. 742: "La preterición de alguno o de todos los herederos forzosos en línea recta, sea que vivan al otorgarse el testamento o sea que nazcan después de muerto el testador, anulará la institución de heredero, pero valdrán las mandas y mejoras cuando no sean inoficiosas ..."

Ignacio antes que la viuda del testador y cumplídose así la condición necesaria para el advenimiento de los nietos a la herencia bajo la Octava de las cláusulas testamentarias, el alcance de su derecho, si tuviera que dilucidarse sería, si acaso, entre los fideicomisarios sustitutos y la sucesión del fiduciario, constituída ésta en parte por los sustitutos mismos, pero en nada puede ello afectar el derecho del hijo natural y su sucesión a la parte de la herencia que le corresponde. ■

### Cuota Hereditaria del Hijo Natural

Procede determinar la cuota hereditaria correspondiente al hijo natural reconocido y por ende a la demandada Josefa Rivera como su heredera universal. Bajo el estado de derecho aquí aplicable—artículo 767 del Código Civil, antes de ser enmendado por las leyes número 13 de 29 de marzo de 1945 y número 255 de 10 de mayo de 1949—cuando el testador dejaba hijos o descendientes legítimos e hijos naturales legalmente reconocidos, tenía cada uno de éstos derecho a la mitad de la cuota que correspondiera a cada uno de los legítimos no mejorados, siempre que cupiera dentro del tercio de libre disposición, del cual habría de sacarse, deduciendo antes los gastos de entierro y funeral. ■

Siendo Ignacio el único hijo legítimo del causante, le correspondían por legítima las dos terceras partes del haber hereditario de su padre. Art. 737. Como la cuota del hijo natural se mide por la que le corresponda al hijo legítimo no mejorado, siendo la de Ignacio de dos tercios, la de aquél sería del tercio restante. Ahora bien, ¿tiene Ignacio el concepto de hijo legítimo no mejorado por el hecho de no concurrir otros hijos legítimos del testador? ¿O debe considerársele sólo en cuanto al tercio de su legítima corta como no mejorado por el hecho de haber instituido el testador la sustitución fideicomisaria condicional que conocemos, a favor de sus tres nietos, en el tercio de mejora? ■

La porción de dos terceras partes a que como único hijo legítimo tenía derecho Ignacio no pierde su concepto de legítima por el hecho de que el testador gravara el tercio de mejora con una sustitución fideicomisaria condicional a favor de sus nietos.

Cuando concurre un solo hijo legítimo con uno natural, las legítimas de ambos están predeterminadas por el código, y a excepción de los gravámenes que sobre el tercio de mejora autoriza el mismo, no puede en forma alguna acortarse el derecho de los legitimarios a sus respectivas porciones. Ya dijimos que el testador pudo haber destinado el tercio de mejora para instituir a sus nietos herederos directos suyos en dicho tercio, aun en vida de Ignacio, o gravarlo con una sustitución fideicomisaria, con o sin condición. Aquí se hizo esto último, con la condición que conocemos, pero el derecho de Ignacio a los dos tercios de la legítima larga subsistía a la fecha de la muerte de su padre, sujeto al gravamen que ya hemos examinado, sin que en ese momento advinieran a la herencia, como herederos, los nietos del testador, y sin que se afectara por tanto su condición de hijo legítimo no mejorado en concurrencia con el hijo natural. En consecuencia, la cuota del hijo natural reconocido, medida también a la fecha de la muerte de su padre, la constituye el tercio libre, o sea, la mitad de la legítima larga del único hijo legítimo que con él concurrió en la herencia. 221 Jurisp. Civil 684.

### Consecuencia de la Subsistencia del Gravamen Sobre la Mejora

Fuera de controversia está, por lo ya dicho, el derecho del hijo natural—y de su heredera, la demandada Josefa Rivera—al tercio de libre disposición del caudal relicto "una vez deducidos los gastos de entierro y funeral." La salvedad que a favor de los aquí demandantes se ha hecho del gravamen constituído por vía de sustitución fideicomisaria condicional sobre el tercio de mejora de la legítima de Ignacio,

no tiene consecuencia jurídica alguna sobre ese derecho, aun acaecida la muerte de Ignacio. Por lo tanto, en cuanto a ella, la sentencia dictada por el tribunal de instancia será confirmada, sin que sea necesario entrar a considerar los fundamentos de nulidad por ella aducidos en su reconvención como causa de nulidad absoluta del testamento en virtud del cual los demandantes instaron la presente acción. ▮

Tampoco tiene consecuencias jurídicas dicha salvedad en cuanto a la demandada Eustacia Luciano Maldonado, viuda del testador, primero, porque desaparecida la institución de herederos hecha a su favor en la mitad del tercio de libre disposición, desapareció también la sustitución fideicomisaria constituída a favor de los demandantes sobre dicha porción libre, sin que altere esta conclusión el hecho de en efecto ella contrajese segundas nupcias; y, segundo, porque conforme a su derecho legitimario, le correspondía el usufructo viudal en un tercio de la herencia, sin que pudiera privársele del mismo por razón de su nuevo matrimonio, por lo cual en nada quedó afectada la sustitución fideicomisaria condicional constituída a favor de los demandantes sobre el tercio de nuda propiedad de la mejora, pues dicha figura jurídica sólo constituía un gravamen permisible, a pesar de la preterición del hijo natural, sobre la legítima de Ignacio en dicha porción. En consecuencia la demanda contra la viuda fue correctamente declarada sin lugar y en cuanto a ella concierne, la sentencia será igualmente confirmada. (15)

*En ambos extremos, sin embargo, la sentencia se confirma por razonamientos distintos a los expresados por el tribunal de instancia, ya que en ninguno de dichos supuestos*

---

(15) En virtud del contrato de transacción celebrado el 13 de marzo de 1940, Ignacio adquirió de la viuda su mitad ganancial, más todo interés, participación y pertenencia en la cuota usufructuaria como cónyuge viudo, así como cualquier otro derecho, interés, participación, beneficio o acción que pudiera corresponderle en la herencia del causante como heredera, acreedora o por cualquier otro concepto, recibiendo ésta determinados bienes en consideración a dicha cesión.

*era necesario decretar la nulidad del testamento en su totalidad, bastando a esos fines, de acuerdo con la doctrina jurídica aplicable, declarar la nulidad de la institución de herederos y la inoficiosidad de los legados, salvando por imperativo de ley el gravamen constituido por vía de sustitución fideicomisaria condicional a favor de los demandantes sobre el tercio de mejora.*