JOSÉ LUIS VIVALDI, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

*Número:* 1388    *Resuelto:* 30 de noviembre de 1962

630

*Luis López de Victoria,* abogado del recurrente; el *Registrador* recurrido compareció por escrito.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Doña Sabbina Brigantti Lacorte otorgó testamento abierto en el cual, después de expresar que no tenía descendientes ni ascendientes, manifestó que su caudal estaba formado por los siguientes bienes: a) una casa sita en la Calle Mattei Lluberas, de Yauco; b) el mobiliario de dicha casa; y c) un certificado de depósito por la suma de $600 expedido por el Banco Crédito y Ahorro Ponceño. Dispuso 1) que el importe del certificado de depósito se utilizara para cancelar un crédito hipotecario que gravaba la referida casa, y que se encontraba reducido a aproximadamente dicha suma; 2) legó a doña Silveria Rosario el mobiliario y enseres que se encontraban en su residencia; y, 3) "[l]a testadora lega la finca urbana . . ., o sea la casa con el derecho al solar que enclava, a las siguientes personas y en la siguiente proporción:" un condominio de una cuarta parte cada uno, a doña Silveria Rosario y doña Irving Rosario; y un condominio de una octava parte, a cada uno de sus tres hermanos María, Rafael y Antonia, y a su hermana política doña Corina Vélez. Finalmente, señaló que "en el remanente de todos sus bienes, derechos y acciones, la testadora designa y nombra por sus

únicos y universales herederos a las personas mencionadas anteriormente" y en la misma proporción en que les legó la finca urbana.

Al óbito de la testadora se practicó la correspondiente inscripción del inmueble a favor de las personas mencionadas anteriormente, a título de legado, y en la proporción dispuesta en el testamento. Mediante la escritura Núm. 1 de 5 de enero de 1949 otorgada ante el Notario don Angel Padró, doña Corina Vélez cedió y traspasó a doña María Brigantti "todo condominio, derechos y acciones que le correspondan o puedan corresponderle en el [referido] inmueble, *como heredera testamentaria* de doña Sabbina Brigantti Lacorte." Dos años después, doña María Brigantti vendió a don José Luis Vivaldi un condominio de una mitad en dicha casa, en el cual estaba comprendido el que había adquirido por compra a su cuñada Corina. Presentada copia certificada de la primera escritura de cesión, el Registrador de la Propiedad de San Germán denegó su inscripción por observarse que la vendedora sólo cede sus derechos y acciones como heredera testamentaria y no como legataria según fuera instituida en el testamento. En su consecuencia denegó asimismo la inscripción de la venta a favor de Vivaldi, en cuanto a una participación de una octava parte, por no aparecer inscrita a favor de la transmitente. ■

Como en efecto, y aunque se refiera a un bien determinado, es innegable que se trata de un llamamiento a la universalidad del caudal remanente, asimilable a un legado de cuota alícuota —por recaer, repetimos, sobre el único activo de la herencia—, nos referimos brevemente a esta figura jurídica. El efecto de la disposición cuando se considera *conjuntamente* con la cláusula sobre institución de herederos es distribuir la herencia entre varios designados mediante la atribución de cuotas indeterminadas. ■

## I

La figura del legado de cuota alícuota([1]) ha sido motivo de apasionado debate en la doctrina española, dependiendo en gran parte del criterio que se sustente, bien subjetivo u objetivo, en cuanto a la manera de determinación del carácter de heredero o legatario. A no poco ha contribuido la vacilación que se observa en la jurisprudencia interpretativa y la debilidad evidente del reconocimiento legislativo en que se apoyan los sostenedores de tal figura. Es por eso que ha merecido la calificación de "figura extraña, ambigua y desconcertante." ■

Antes de señalar los principales puntos que se aducen en torno a este asunto, es de rigor exponer brevemente lo que se entiende por legado de parte alícuota, y explicar a grandes rasgos la tesis que propugnan los subjetivistas y los objetivistas. Ossorio Morales([2]) define el legado de parte alícuota como "un legado cuyo contenido se determina por el testador como fracción aritmética de su patrimonio total, como parte o cuota abstracta, ideal, del mismo." Manresa([3]) indica que "es aquél por el cual el testador dispone a título particular de una porción proporcional de su herencia." En general, los autores señalan como su nota característica la participación que tiene el beneficiario de una cuota en bienes indeterminados del caudal.([4])

---

([1]) Se le llama también legado parciario. Borrell y Soler se refiere al mismo como legado de herencia, *Derecho Civil Español*, ed. Bosch, 1954, tomo 5º, pág. 197.

Hicimos breve referencia al legado de cuota alícuota en el escolio 13 de la opinión emitida en *Piazza* v. *Piazza*, 83 D.P.R. 414 (1961).

([2]) *Estudios de Derecho Privado*, Ed. Bosch, 1942, pág. 118.

([3]) Manresa, *Comentarios al Código Civil Español* (7a. ed., 1951), tomo VI, pág. 702.

([4]) De Casso y Cervera indican en su *Diccionario de Derecho Privado*, 1954, pág. 2446, que el legado de parte alícuota es una variedad del de cantidad, pero esta posición es combatida por la mayor parte de la doctrina. Véase, la Sentencia de 2 de enero de 1920 (Jurisp. Civ., tomo 149, pág. 11, 17) en donde se establece la diferencia entre un legado de carácter específico y determinado—de todo el mobiliario, cuadros y objetos de arte—y el

Castán ([5]) contrapone los sistemas mencionados diciendo que "el romano, de matiz *subjetivo*, que considera heredero a aquel sucesor a quien el testador designe como tal heredero, independientemente, en principio, de que le instituya en toda la herencia, en una parte alícuota de ella o en una cosa cierta y determinada, y el llamado *germánico* o *moderno*, de signo *objetivo*, que conceptúa como heredero a quien sea llamado por el difunto a adquirir la totalidad o universalidad de las relaciones jurídicas objeto de la transmisión, haya sido o no designado como heredero." Resalta que el primer criterio atribuye una gran significación a la voluntad del testador según ésta se exprese en la manifestación de última voluntad, manteniendo su eficacia decisiva para la determinación del concepto, ya de heredero o legatario; en el segundo, el elemento determinante de la sucesión hereditaria lo constituye el contenido del patrimonio. Los subjetivistas invocan los preceptos de los artículos 668([6]) y 675([7]) del Código Civil español, equivalentes a los artículos 617 y 624 de Puerto Rico, 31 L.P.R.A. secs. 2122 y 2129 —la intención del testador manifestada por los términos del llamamiento—; los objetivistas

legado de parte alícuota, que se identifica con el concepto de "indeterminado y proporcinoal y aun aritmético." La caracterización que como legado de parte alícuota hicimos en *Junghanns* v. *Cornell University*, 71 D.P.R. 673, 685 (1950), al referirnos a un legado de la totalidad de los bienes muebles de un testador, es, pues, inexacta.

([5]) *Derecho Civil Español, Común y Foral* (7a. ed., 1960), tomo 6º, vol. 1º, pág. 74.

([6]) El artículo 668 del Código Civil español dispone así:

"El testador puede disponer de sus bienes a título de herencia o de legado.

"En la duda, aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia."

([7]) El artículo 675 del Código Civil español dispone así:

"Toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad del testador. En caso de duda se observará lo que aparezca más conforme a la intención del testador según el tenor del mismo testamento.

"El testador no puede prohibir que se impugne el testamento en los casos en que haya nulidad declarada por la Ley."

se amparan en los artículos 660 [8] y 768 [9] del mencionado cuerpo legal, concordantes con los artículos 609 y 697 de Puerto Rico, 31 L.P.R.A. secs. 2091 y 2286 —la índole del llamamiento. ■

Las distintas posiciones de la doctrina española respecto al legado de parte alícuota pueden sintetizarse así: A) Los que admiten su existencia como figura jurídica independiente, basándose en que 1) en el concepto de heredero se integra la voluntad del testador, como elemento subjetivo, y, por tanto, hay legado de parte alícuota siempre que el causante llama a una persona a una fracción de su patrimonio sin atribuirle simultáneamente la denominación de heredero, tesis que sustentan, entre otros, Roca Sastre, [10] Traviesas [11] y Núñez Lagos; [12] 2) la diferencia fundamental que se señala entre el heredero y el legatario desde el punto de vista de la responsabilidad personal o ilimitada (ultra vires) por razón de las deudas del testador, pues como indica Puig Brutau, [13] aquél es llamado a todo el patrimonio del cau-

---

[8] El artículo 660 del Código Civil español dispone como sigue:

"Llámase heredero al que sucede a título universal, y legatario al que sucede a título particular."

[9] El artículo 768 del Código Civil español dice así:

"El heredero instituido en una cosa cierta y determinada será considerado como legatario."

[10] *Estudios de Derecho Privado*, Ed. Revista de Derecho Privado (1948), Vol. II, pág. 181 *et seq.*

[11] *Los Legados*, Revista de Derecho Privado (1931), tomo XVIII, pág. 145.

[12] *El Derecho Sucesorio ante la Tradición Española y Código Civil*, Revista General de Legislación y Jurisprudencia (1951), tomo 189, págs. 385, 408.

[13] *Fundamentos de Derecho Civil*, Ed. Bosch, 1961, tomo V, vol. 1, págs. 82 *et seq.*, especialmente las 99 a 103.

A esta diferencia también alude Olavarría Téllez en su monografía *Notas sobre el Legado de Parte Alícuota*, Revista de Derecho Privado (1953), vol. XXXVII, págs. 397, 415, en las siguientes palabras: "La nota específica y característica de tal legatario frente al heredero reside, no en que aquél tenga limitada su responsabilidad por el activo que le corresponda, sino en que el mismo no responde, es decir, no queda vinculado."

sante, en su activo y pasivo, mientras éstos están llamados únicamente a una fracción del activo resultante después de liquidada la herencia, sin que contraigan responsabilidad personal alguna si el pasivo excediere al capital; B) Los que niegan el legado de parte alícuota, aduciendo que, siendo siempre la institución de heredero el llamamiento al todo a una cuota abstracta de la universalidad hereditaria, no cabe en nuestro sistema tal legado parciario. Los principales expositores de esta posición son Ossorio Morales, [14] Díaz Cruz, [15] Bonet Ramón, [16] Ferrara [17] y Manresa. [18]

Los sostenedores del legado de cuota alícuota se refieren como base de derecho positivo para justificar su existencia a las disposiciones de los artículos 1038, 1049, 1055, 1056 y 1065 de la Ley de Enjuiciamiento Civil, que lo menciona expresamente al incluir los legatarios de parte alícuota entre las personas que pueden promover y ser parte legítima en el juicio voluntario de testamentaría. [19] Se invoca también el artículo 655 del Código Civil español (artículo 597 de Puerto Rico, 31 L.P.R.A. sec. 2052) como un reconocimiento *a contrario sensu* de la discutida figura jurídica, al disponer en su primer párrafo que "sólo podrán pedir reducción de las donaciones aquéllos que tengan derecho a legítima o a una parte alícuota de la herencia y sus herederos y causahabien-

---

[14] *Estudios de Derecho Privado*, Ed. Bosch (1942), págs. 117–153.

[15] *Los Legados*, Ed. Reus (1951), págs. 483–491.

[16] Revista de Derecho Privado (1941), tomo XXV, págs. 40–42

[17] *Estudio sobre la sucesión a título universal y particular, con especial aplicación a legislación española*, Revista de Derecho Privado (1923), tomo X, pág. 322, en donde el autor, en clara repudiación del régimen espiritualista o subjetivo, afirma que "el título dado por el testador al favorecido y la fórmula empleada para el llamamiento, no tiene en sí ninguna importancia. Puede haber institución de heredero, aunque el testador diga lego o dejo mis bienes a Tizio, como puede haber legado aun cuando el testador nombre heredero en un bien determinado." (A la pág. 329(1), *in fine*.)

[18] Manresa, *op. cit.*, tomo VI, pág. 130.

[19] El artículo 23 de la Ley de Procedimientos Legales Especiales de 9 de marzo de 1905, 32 L.P.R.A. sec. 2361, autoriza a cualquier legatario, sin distinción alguna, a promover el juicio de administración judicial de los bienes de un finado.

tes," y luego añadir en el párrafo siguiente que "los legatarios que no lo sean de parte alícuota . . . no podrán pedir la reducción ni aprovecharse de ella." Indirectamente se dice que alude al mismo el inciso 7º del artículo 42 de la anterior Ley Hipotecaria española, (20) igual en su redacción a nuestro artículo 42, 30 L.P.R.A. sec. 91, que autoriza la anotación preventiva de su derecho en el Registro al "legatario que no tenga derecho, según las leyes, a promover el juicio de testamentaría." (21) es decir conforme a los preceptos citados de la Ley de Enjuiciamiento Civil, y que no puede ser otro que el legatario que no lo sea de parte alícuota.

Sin embargo, cuando se analizan detenidamente estas referencias legislativas al legado de cuota alícuota, expresas o indirectas, se disipa en gran medida su eficacia como base **para apuntalar su existencia.** Así, tanto Ossorio Morales como Díaz Cruz, en las obras citadas, con lógica demoledora, señalan que las referencias contenidas en la Ley de Enjuiciamiento Civil tienen, frente al silencio del Código Civil, muy escaso valor, por tratarse de un cuerpo legal de vida anterior a dicho código, y arguyen que la existencia o no de la figura es una cuestión de derecho sustantivo, no de simple ordenamiento procesal, y no puede prevalecer ante un criterio contrario que expresa el Código Civil. Seguidamente arremeten contra la referencia contenida en el artículo 655 ya citado, y demuestran que la misma carece de sentido y sólo puede atribuirse a un error del legislador ya que el precepto citado no tiene otra finalidad que la de autorizar la reducción de las donaciones inoficiosas y resulta superflua la enumeración que el mismo contiene sobre quiénes pueden y a quiénes les está vedado pedir la reducción, porque sabido es que tal facultad corresponde exclusivamente a los herederos forzosos,

(20) El Reglamento español vigente dispone en su artículo 152 que a los efectos de las anotaciones preventivas de legado, "los legatarios de parte alícuota *se considerarán asimilados* en todo caso a los herederos."

(21) En Puerto Rico, en virtud de lo expresado en el escolio 19 anterior, esta disposición es inoperante a todos los efectos **prácticos.**

únicos a quienes puede perjudicar una donación inoficiosa. (²²) Además, se advierte que el artículo citado, copiado literalmente del artículo 1092 del Código Civil italiano, incurre en un error de traducción y adaptación, pues si bien en este último se justificaba que la reducción de las donaciones correspondiera a "aquellos a cuyo favor la ley reserva la legítima *u otra cuota de la sucesión*" (traducido erróneamente por el legislador español como "parte alícuota") en razón de que las reservas incluyen tanto las legítimas en sentido estricto —a favor de los descendientes y ascendientes legítimos—como otros derechos sucesorios a favor del cónyuge viudo y los hijos naturales, tal disposición es innecesaria en España en donde el viudo y los hijos naturales tienen la condición de herederos forzosos. Finalmente, la referencia en el artículo 42 de la Ley Hipotecaria anterior no tiene mayor alcance pues obedece al deseo de armonizar con la ley procesal, y adolece, por tanto, de la misma debilidad que la apuntada al discutir las citadas disposiciones de la Ley de Enjuiciamiento Civil.

Según indicamos al comienzo de esta opinión, la posición de la jurisprudencia española sobre el legado de cuota alícuota ha sido vacilante e imprecisa; de ahí que, tanto los sostenedores de esta figura jurídica como quienes reconocen su existenica e insisten en que se trata de un verdadero heredero, con frecuencia invoquen distintos pronunciamientos para apoyar sus respectivas posiciones. Sin embargo, puede esbozarse una doctrina que, en términos generales, (²³) reconoce que es aventurado establecer una absoluta identidad

---

(²²) Puig Brutau, *op. cit.*, pág. 84, admite expresamente que la comentada disposición del Código Civil no constituye una base suficiente para sostener la existencia del legado de cuota alícuota, y lo atribuye, sin duda, a "un error legislativo."

(²³) En adición a las sentencias a que nos referiremos expresamente, pueden verse además las siguientes: 15 de enero de 1918 (Jurisp. Civ., tomo 142, pág. 110); 18 de octubre de 1917 (Jurisp. Civ., tomo 141, pág. 461); 11 de febrero de 1903 (Jurisp. Civ., tomo 95, pág. 278) y 14 de junio de 1898 (Jurisp. Civ., tomo 84, pág. 508).

éntre el heredero y el legatario de parte alícuota, [24] pero
que el tratamiento jurídico de ambos ofrece "múltiples as-
pectos de coincidencia" por el rasgo común de "atribución de
bienes indeterminadamente" y la participación por igual en
la responsabilidad referente a los gastos de partición [25]
calificándose a tal legado como "una figura intermedia o *sui
generis* entre el legado y la herencia propiamente dichos." [26]
En discutidas afirmaciones que han sido objeto de severa
crítica se ha indicado que entre las notas de coincidencia
"cabe señalar el de la responsabilidad por deudas heredita-
rias, tratándose de legado de parte alícuota en pleno dominio
o en nuda propiedad, que no haya sido excluido de ellos por
el testador, ya que el heredero así instituido adquiere, por
la propia naturaleza de la institución, una condición asimi-
lable a la de herederos a beneficio de inventario, porque si
con relación a los sucesores está constituida la herencia por
el haber líquido que resulte después de deducir las cargas,
necesariamente el legatario de parte alícuota supeditado,
como el heredero, a la liquidación del caudal hereditario, ha-

---

[24] Resolución de la Dirección General de los Registros, de 14 de no-
viembre de 1935 (Roca Sastre y Molina Juyol, *Jurisprudencia Registral*,
tomo VII, pág. 699), en cuyo primer considerando se dice (a la pág. 705):
"...tanto en la mayoría de los Códigos modernos como en la doc-
trina nacional y extranjera predomina el criterio de considerar el legado
de parte alícuota como una verdadera disposición de carácter universal,
hasta el punto de entenderse que no ostenta la cualidad de heredero
el llamado con esta denominación a quien no se atribuya la adquisición
del patrimonio del de *cujus*, y sí al que lo adquiere en su totalidad o
en una porción matemática, aunque no haya sido llamado como here-
dero, ya que la institución no debe ir unida a las palabras, sino que
deriva de la sustancia misma de la disposición, de tal manera que,
cualesquiera que sean las expresiones empleadas por el testador, será
reconocido como heredero el sucesor en la universalidad de los bienes
o una cuota parte de ellos, teniendo toda otra persona favorecida la
cualidad de legatario."
[25] Sentencias de 16 de octubre de 1940 (transcrita en Puig Brutau,
*op. cit.*, págs. 90–91); 28 de febrero de 1949 (III Jurisp. Civ., tomo 25, págs.
793, 816); y 11 de enero de 1950 (III Jurisp. Civ., tomo 29, pág. 140).
[26] Sentencia de 11 de enero de 1950, supra, pág. 152.

brá de participar en ellas hasta el límite de su haber líquido y nada más." (27)

Para terminar esta somera incursión en la controvertible figura del legado de cuota alícuota, (28) nos permitimos reproducir un párrafo del comentario de Ossorio Morales (29) a la Sentencia de 16 de octubre de 1940, que, a nuestro juicio, representa un enfoque realista de la cuestión planteada, pues pretende armonizar las proposiciones básicas en que descansan los subjetivistas y los objetivistas:

"No cabe duda, ciertamente, de que la voluntad del testador es la ley fundamental de la sucesión, pero resulta bastante arriesgado admitir que esa voluntad pueda alterar los criterios objetivos que señalan la diferencia existente entre la institución de heredero y el legado. Es fácil comprobar, en efecto, que la contradicción entre los arts. 660 y 768, de una parte, y los arts. 675 y 668 de otra, es más aparente que real, y que al señalar estos la voluntad del testador como norma decisiva de interpretación del testamento, no alteran el criterio objetivo que el propio Tribunal Supremo reconoce (apartado a) como científicamente más fundado, de atender para calificar la disposición testamentaria, a su propio contenido. Los arts. 668 y 675 del Código civil remiten, en caso de duda, a la intención o voluntad del testador. El primero de ellos, al disponer que

---

(27) Sentencia de 16 de octubre de 1940, supra.

(28) Para los interesados en una exploración más amplia de esta interesante cuestión, se sugiere la lectura de los siguientes autores, a los cuales no nos hemos referido específicamente para no extendernos demasiado en esta opinión: De Buen, notas a la traducción del *Curso Elemental de Derecho Civil*, de Colin y Capitant (3a. ed.), tomo 8, pág. 345; Morell, *Comentarios a la Legislación Hipotecaria*. (2a. ed. 1928), tomo 3, pág. 135; Espín Cánovas, *Manual de Derecho Civil Español*, Ed. Revista de Derecho Privado (1957), pág. 13; Valverde, *Tratado de Derecho Civil Español* (4a. ed., 1939), tomo V, pág. 326; De Diego, *Instituciones de Derecho Civil Español* (1959) tomo III, pág. 513; Sánchez Román, *Estudios de Derecho Civil* (2a. ed. 1910), tomo 6, pág. 1298; Espinar Lafuente, *La Herencia Legal y el Testamento*, Ed. Bosch (1956), pág. 223; Ortega Pardo, *Heredero Testamentario y Heredero Forzoso*, Anuario de Derecho Civil (1950), vol. 3, pág. 321; Vallet de Goytisolo, *Imputación de Legados Otorgados a favor de Legitimarios*, Revista de Derecho Privado (1948), vol. XXXII, págs. 315, 316.

(29) Revista General de Legislación y Jurisprudencia (1941), tomo 169, págs. 150–151.

'en la duda, aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia'; el segundo, al proclamar que 'toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, no ser que aparezca claramente que fue otra la voluntad del testador', añadiendo que, 'en caso de duda, se observará lo que aparezca más conforme a la intención del testador, según el tenor del mismo testamento'. Lo decisivo es siempre la intención, lo querido por el causante, pero, a nuestro juicio, dentro del criterio *objetivo* que ha servido de base al legislador para fijar la distinción entre heredero y legatario, criterio que la voluntad individual no puede alterar. Es decir, lo que esos preceptos establecen es que la declaración de voluntad del causante no está sujeta al rigorismo formal que el Derecho romano imponía, y, por consiguiente, que ni es necesario ni basta con que el testador haya empleado los términos *heredero* o *legatario* para que sus disposiciones sean consideradas como tales, sino que es necesario averiguar *si ha querido realmente* instituir heredero o establecer un legado. Pero para saber esto habrá que atender al contenido que ha querido dar a su disposición y comprobar si su propósito ha sido atribuir a una persona la universalidad o una cuota de su patrimonio, en cuyo caso éste será heredero, o una o varias relaciones determinadas, en cuyo supuesto será legatario. Como dice Ferrara, refiriéndose precisamente al Derecho español, 'no sirve la intención del testador, si esa intención no se realiza en una congruente disposición del *universum ius*. De este modo se salva la contradicción que algunos tratadistas, y ahora el Tribunal Supremo, creen ver entre el art. 668 del Código que atiende a la voluntad del testador, y el art. 768, que para calificar la disposición atiende a la manera de disponer, a la forma en que los bienes son dejados. Este último precepto no hace abstracción de la *intención,* sino de las *palabras* empleadas por el testador, ya que lo que dice es que, aunque el testador haya utilizado el término *heredero,* si se le ha instituído en cosa cierta será un legatario, en perfecta congruencia con el artículo 668, puesto que existiendo una contradicción entre las palabras y el contenido de la disposición—y siendo este contenido revelador de que la intención del testador fue atribuir una cosa concreta, es decir, realizar una transmisión singular—, la

resuelve dando la preferencia a la intención. Del mismo modo, cuando se haga un llamamiento en parte alícuota, cualquiera que sea la fórmula empleada por el testador y aunque éste haya empleado la palabra legado, al disponer de una cuota abstracta, de una unidad ideal—independiente de su contenido material—, el testador ha revelado *que su intención fue transmitir una universalidad,* realizar una transmisión a título universal, y, por consiguiente, designar un heredero. No debe olvidarse que, como dice Danz, los *resultados jurídicos* no se producen porque la voluntad interesada los persiga, sino porque el Derecho objetivo los atribuye a aquellas declaraciones de los particulares mediante las cuales éstos se proponen realizar determinados fines económicos o sociales." (Subrayado nuestro.) ■

## II

Nuestra jurisprudencia se pronuncia en el sentido de descartar el valor sacramental de las palabras para atender más a la voluntad del testador que al sentido literal de aquéllas. *Luce & Co.* v. *Cianchini,* 76 D.P.R. 165, 171 (1954). Así, en *Junghanns* v. *Cornell University,* 71 D.P.R. 673 (1950), no obstante haberse usado por el testador las palabras *"devise"* y *"bequeath"*—significativas en el Derecho americano de la presencia de legado—, como en la cláusula correspondiente se transmitía la universalidad que constituía el caudal hereditario, y no algo individual y determinado, sostuvimos que se trataba de una institución a título universal y no a título particular, y atribuimos a la entidad designada la cualidad de heredera, posición que revela un claro criterio objetivista en la consideración del llamamiento. En *Blanch* v. *Registrador,* 59 D.P.R. 730 (1942), utilizamos igual criterio al expresar que aun cuando el testador usó la palabra "lego" al disponer de todos sus bienes, surgía clara su intención de instituirla heredera, y se consideró al efecto que el llamamiento se refería al *universum ius,* a que alude Ferrara. Véase también, *Torres* v. *Sucn. Caballero,* 39 D.P.R. 724 (1929). ■

Consideradas en conjunto todas las cláusulas del testamento de doña Sabina Brigantti, y aun cuando admitiéramos el legado de cuota alícuota en contraposición al heredero, es de rigor concluir que la designación a favor de las distintas personas ya mencionadas, en la proporción que se indica, es propiamente una institución de herederos a título universal, aun cuando para ello se usara la palabra "lego". Corresponde observar que el llamamiento se refiere al remanente de los bienes, una vez descontado el legado genérico del mobiliario, y que comprende la universalidad del caudal restante. Cfr. Sentencia de 18 de octubre de 1917 (Jurisp. Civ. tomo 141, págs. 461, 467). Véase, el escolio 10 de la opinión emitida en *Díaz Lamoutte* v. *Luciano*, 85 D.P.R. 834 (1962). Además, si alguna duda pudiera existir sobre el particular, la intención de la testadora se manifiesta palmariamente en la cláusula adicional en la cual instituye como herederos a los supuestamente "legatarios" en la misma proporción que había indicado al disponer "el legado". El título de adquisición es de herencia, no de legado.

*Por los fundamentos expresados, se revocarán las notas recurridas, y se ordenará la inscripción solicitada.*