EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Iris Nilda Moreno Martínez<br><br>        Apelada<br><br>             vs.<br><br>Carmen Martínez Ventura,<br>Rafael A. Moreno Vélez,<br>Et Al.<br><br>        Apelantes | Apelación<br><br>2006 TSPR 105<br>168 DPR _____ |

Número del Caso: AC-2005-8

Fecha: 28 de junio de 2006

Tribunal de Apelaciones:

                Región Judicial de Aguadilla

Juez Ponente:

                Hon. Carlos Soler Aquino

Abogado de la Parte Apelante:

                Lcdo. Fernando J. Nieves Camacho

Abogado de la Parte Apelada:

                Lcdo. Héctor A. Sosa González


Materia: Partición de Herencia

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Iris Nilda Moreno Martínez

    Apelada

        vs.                AC-2005-008      Certiorari

Carmen Martínez Ventura,
Rafael A. Moreno Vélez,
Et Al.

    Apelantes

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI

San Juan, Puerto Rico, a 28 de junio de 2006.

Tenemos la ocasión para determinar si resulta nulo un testamento abierto en el cual la identificación del testador por conocimiento del notario autorizante es precedida por una identificación a través de los medios supletorios dispuestos en la Ley Notarial (en adelante la Ley).

## I.

Rafael Moreno Visbal falleció el 18 de junio de 1998, luego de haber otorgado un testamento abierto el 27 de abril de 1997 ante el notario Juan A. Méndez Miranda. En el referido testamento, Moreno Visbal nombró herederos en cuanto al tercio de legítima estricta a sus hijos Iris N. Moreno Martínez

(en adelante la recurrida) e Israel Moreno Martínez. En cuanto a los tercios de mejora y libre disposición, designó herederos respectivamente a su nieto Rafael A. Moreno Vélez y a su esposa Carmen Martínez Ventura (en adelante los peticionarios).

Al principio del referido testamento el notario expresó en lo pertinente:

> --------------------COMPARECE--------------------
> --DE UNA SOLA PARTE: DON RAFAEL MORENO VISBAL, mayor de edad, casado... propietario, vecino y residente de Rincón Puerto Rico... **identificado con licencia número (268391).**--------------------
> ---------------DOY FE de haberme asegurado de la identidad del compareciente por los **medios establecidos en el Artículo diecisiete (c) [17 (c)] de la Ley Notarial...**[1]

No obstante, al final del testamento el notario expresó lo siguiente:

> ---**Del conocimiento, profesión y vecindad de el** (sic.) **otorgante... DOY FE.**--------------------
> -- (Énfasis nuestro).

---

[1] En cuanto a la identificación mediante reseña de documentos y señas personales, el **Art. 17 de la Ley Notarial** dispone lo siguiente:

> Serán medios supletorios de identificación, en defecto del conocimiento personal del notario:
>
> (a)...
>
> (b)...
>
> (c) La identificación por **documento de identidad con retrato y firma**, expedido por las autoridades públicas competentes del Estado Libre Asociado de Puerto Rico, de los Estados Unidos, o de uno de los estados de la Unión, cuyo objeto sea identificar a las personas o por pasaporte debidamente expedido por autoridad extranjera... (Énfasis nuestro).

El 10 de marzo de 1999 la recurrida presentó una demanda sobre división de bienes hereditarios ante el Tribunal de Primera Instancia, Sala Superior de Aguadilla. La demanda fue enmendada el 17 de junio de 2003 para alegar que el testamento en cuestión era nulo debido a que el notario no había dado fe en éste de conocer personalmente al testador, ni de haber suplido esa falta conforme a alguno de los medios dispuestos en la Ley.

El 25 de junio de 2003 los peticionarios contestaron la demanda enmendada y adujeron que el testamento era válido ya que del mismo surgía claramente que el notario autorizante conocía personalmente al testador. Además argumentaron que tal conocimiento era un hecho de fácil constatación por razón de que anteriormente el testador y su esposa habían otorgado varias escrituras ante el referido notario. Poco después la recurrida presentó una moción de sentencia sumaria parcial a la cual los peticionarios se opusieron.

El 11 de febrero de 2003 el Tribunal de Primera Instancia, determinó que no existía en este caso una genuina controversia de hechos que ameritase la celebración de una vista en su fondo, por lo que dictó una sentencia sumaria parcial y decretó la nulidad del testamento en cuestión.[2] Sostuvo el foro de instancia que el hecho de que el notario hubiese identificado al testador mediante uno de los medios supletorios autorizados por la Ley –su licencia de conducir–

---

[2] El Tribunal de Primera Instancia ordenó, además, que se procediera a tramitar la correspondiente declaratoria de herederos.

implicaba que no lo conocía personalmente. Sin embargo, no mencionó la antes señalada dación de fe sobre el conocimiento del testador expresada al final del testamento. Los peticionarios presentaron una moción de reconsideración ante el foro de instancia, la cual fue declarada no ha lugar.

Así las cosas, los peticionarios recurrieron ante el Tribunal de Apelaciones, el cual confirmó la determinación apelada mediante una sentencia de 29 de octubre de 2004. El Tribunal de Apelaciones coincidió con el foro de instancia en cuanto a que el notario autorizante del testamento en cuestión desconocía la identidad del testador. Además estuvo de acuerdo en que ese notario no había cumplido con el requisito de hacer constar expresamente que no pudo identificar al testador mediante conocimiento directo o a través de testigos de conocimiento, antes de acudir al método supletorio de identificación mediante documentos.

Inconformes con la anterior determinación, y luego de que el foro apelativo les denegara una moción de reconsideración, los peticionarios acudieron oportunamente ante nos y plantearon el siguiente señalamiento de error:

> **Erró el Honorable Tribunal de Apelaciones al confirmar la Sentencia Parcial emitida por el Tribunal de Primera Instancia, que concluyó que el Testamento abierto otorgado por el causante Rafael Moreno Visbal es nulo ab-initio por no haberse supuestamente observado en él las formalidades relacionadas con la identificación del Testador.**

El 29 de abril de 2005 expedimos el auto de *cetiorari* solicitado y el 16 de junio de 2005 concedimos a la parte

recurrida un término de 30 días para presentar su alegato. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A. Formalidades Testamentarias

Históricamente el quehacer jurídico *mortis causa* ha sido investido de mayores formalidades que los negocios *inter vivos* y estas han sido interpretadas con mayor rigor que las formalidades contractuales. E. González Tejera, *Análisis del Término 2002-2003: Derecho de Sucesiones*, 73 Rev. Jur. U.P.R. Num. 3 pág. 777 (2004). Es sabido que en materia de testamentos algunas de las formas prescritas por ley son requisitos solemnes cuya inobservancia conlleva la nulidad del instrumento público en cuestión. "Puede decirse que el testamento es el documento adornado de mayor cantidad de formalidades, de las cuales muchas de ellas, son esenciales para su propia validez...". J. I. Cano Martínez De Velasco, *Solemnidades y formalidades de los testamentos, según doctrina del Tribunal Supremo*, Rev. Dere. Notarial, Núms. 101-102, pág. 139 (julio-diciembre 1978).

No obstante, y a pesar de la innegable importancia de algunas de las formalidades requeridas por el Código Civil en materia testamentaria, al exigir su cumplimiento debemos tener en cuenta que las mismas **"responden, en gran medida, a las realidades sociales de la España de fines del siglo XIX"**. González Tejera, *supra*, pág. 778. (Énfasis nuestro.)

Por esa razón, en diversas ocasiones nos hemos visto en la necesidad de atemperar las referidas formalidades para ajustarlas a las cambiantes realidades de nuestra sociedad. Así, citando a Clemente De Diego, hemos dicho que **"en principio**, **[las formalidades cuya inobservancia conlleva la nulidad del testamento] no deben ser más ni menos que las precisas para hacer auténtica, segura y permanente la última voluntad [del testador]**." Paz v. Fernández, 76 D.P.R. 742, 752 (1954) (Énfasis nuestro). Por ende, "no [se] da igual valor a todas las solemnidades del testamento ni [se] admite que la falta de cualquiera de ellas, lleve siempre aneja la sanción de nulidad del acto". *Id*. Por el contrario, cuando los tribunales nos encontramos ante un testamento que omite alguna formalidad, debemos ejercer nuestro "buen criterio, dada la naturaleza y significación de aquél, [teniendo] en cuenta la índole de dich[a] formali[dad] para apreciar, con relación a su trascendencia, el límite dentro del que pueden conceptuarse cumplidas, armonizando así la voluntad conocida de un testador con los requisitos externos de su expresión." *Id*. Citando a Castán y a Manresa. (Énfasis nuestro).

Con estos criterios en mente, hemos señalado de manera reiterada que no toda omisión en que incurra un notario al otorgar una escritura de testamento lo vicia de nulidad. Berdaguez v. Registrador, 27 D.P.R. 214 (1919); Morales v. Registrador, 35 D.P.R. 905 (1926); Cintrón v. Cintrón, 70 D.P.R. 770 (1950). La jurisprudencia española ha llegado a la misma conclusión:

> [E]xisten algunas sentencias que atenúan el rigor
> de las solemnidades cuya concurrencia exige la ley
> en el acto de otorgamiento... **no se trata de**
> **posibles contradicciones doctrinales porque la**
> **introducción de cierta flexibilidad siempre se**
> **funda en criterios de equidad y éstos tienen su**
> **justificación en circunstancias especiales de cada**
> **caso**. Puig Brutau, <u>Fundamentos de Derecho Civil</u>,
> 2da ed. Tomo V. Vol. II. Ed. Bosch, S.A.,
> Barcelona, pág. 48 (1977). Véase además: G.
> Boehmer, <u>El Derecho a Través de la Jurisprudencia:</u>
> <u>Su aplicación y creación</u>. (Traducido y anotado por
> J. Puig Brutau) Ed. Bosch, Barcelona, págs. 213-
> 219 (1959). (Énfasis nuestro).

Hace ya más de cinco décadas distinguimos entre las formalidades testamentarias que constituyen requisitos de fondo y aquéllas a las que nos referimos como requisitos de forma. <u>Paz v. Fernández</u>, *supra*. Tanto las formalidades de fondo como las de forma tienen que ser cumplidas para que el testamento sea válido. No obstante, el cumplimiento de las primeras tiene que surgir expresamente de la faz de la escritura del testamento o el mismo será nulo *ab initio*. Por el contrario, la omisión de hacer constar específicamente el cumplimiento de las formalidades de forma puede ser subsanada mediante la dación de fe general en cuanto a que se han cumplido todas las formalidades requeridas por ley.

Por otra parte, al discutir el tratamiento que el Tribunal Supremo de España ha dado a las formalidades testamentarias, Puig Brutau comenta lo siguiente:

> **[I]ncluso en esta materia tan formal se ha**
> **manifestado**, en Derecho español, **la lucha entre el**
> **Derecho estricto y la equidad.** Una observación
> atenta de la jurisprudencia del Tribunal Supremo
> permite advertir que por lo general se afirma el
> rigor de los preceptos que imponen solemnidades y
> exigen requisitos en el otorgamiento de los
> testamentos, pero que **a veces también se valoran**

**ciertas circunstancias que aconsejan el ejercicio de cierto arbitrio de equidad.** Puig Brutau, *supra*, pág. 45. (Énfasis nuestro).

Es en el contexto de la inevitable tensión entre el "Derecho estricto" y la equidad que los tribunales debemos evaluar constantemente el alcance del Artículo 636 del Código Civil que dispone:

> Será nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas[.] 31 L.P.R. sec. 2152.

No debemos perder de perspectiva que la principal razón de ser de las formalidades testamentarias es **proteger la voluntad del testador**, "ya que una vez muerto no es posible una investigación sobre la misma". Cano Martínez De Velasco, *supra*. Es precisamente para proteger dicha voluntad que la Ley requiere de manera estricta a los notarios que sigan ciertas formalidades al autorizar testamentos. No obstante, aun en materia testamentaria, los jueces debemos estar alertas ante los peligros inherentes a lo que podríamos llamar **el culto a la forma**:

> El juez deberá –como en cualquier otra interpretación– enfocar todas las «circunstancias del caso», la situación completa, la escritura del testamento en su totalidad, tal como el comercio social lo hace... No estaría de más tampoco advertir que la interpretación de todas las leyes, sin excluir los preceptos de forma, se ha de atener, ante todo, al sentido que sea «más conforme a las necesidades de la vida», y que estas formas, como todas **las formas, no son fines en sí** y que **el más alto deber del juez es hacer que los negocios jurídicos de las partes no se estrellen contra estos preceptos... No obstante... se nota hoy una exageración, muchas veces monstruosa, de la importancia de la forma, y precisamente en estos preceptos de forma que rigen**

**en materia de testamentos.** E. Danz, *La Interpretación de los Negocios Jurídicos*, 3ra Ed. Editorial Revista de Derecho Privado, Madrid, págs. 370-371 (1955). (Énfasis nuestro).

## B. La Identificación del Testador

El notario autorizante de un testamento tiene la importante responsabilidad de identificar al testador. Así lo requieren los Artículos 634 y 635 del Código Civil, que disponen lo siguiente:

> El notario y dos de los testigos que autoricen el testamento deberán conocer al testador, y si no lo conocieren, se identificará su persona con dos testigos que lo conozcan y sean conocidos del mismo notario y de los testigos instrumentales[.] 31 L.P.R.A. sec. 2150.
> .....
>
> Si no pudiere identificarse la persona del testador en la forma prevenida en la sección que precede, se declarará esta circunstancia por el notario... reseñando los documentos que el testador presente con dicho objeto y las señas personales del mismo.
>
> Si fuere impugnado el testamento por tal motivo, corresponderá al que sostenga su validez la prueba de la identidad del testador. 31 L.P.R. sec. 2151.

La importancia de una adecuada identificación de la persona que acude ante un notario para otorgar un testamento es obvia: "Dejar sin identificar debidamente al testador sería tanto como admitir la posibilidad de que alguien dispusiera de un patrimonio ajeno, con el riesgo de que ello sucedería precisamente cuando el verdadero titular ya no podría reclamar por haber fallecido". Puig Brutau, *supra*, p.65. Por ende, no se trata de un asunto en el que los requisitos de forma consagrados en el Código Civil sean

anacrónicos. Ya antes hemos señalado que "[a]unque en la práctica... el descargo y la observancia de la fe de conocimiento conlleva ciertas dificultades reales, lógica y legalmente continúa fundamentada en consideraciones sólidas: evitar la usurpación de la personalidad de otro e imprimirle legitimidad presuntiva al instrumento". In re: Olmo Olmo, 113 D.P.R. 441, 463 (1982).

El principal método para la identificación del testador es mediante el propio conocimiento del notario. Sucn. Santos v. Registrador, 108 D.P.R. 831 (1979). Por consiguiente, tanto la identificación mediante testigos de conocimiento, como la identificación mediante reseña de documentos y señas personales, son métodos supletorios a los que sólo se debe acudir si el notario no conoce al testador. Deliz Muñoz v. Igartúa Muñoz, res. el 23 de enero de 2003, 158 D.P.R. ___, 2003 TSPR 4, 2003 JTS 7.

Como vemos, en circunstancias ideales el notario que autoriza un testamento debe conocer al testador, pero si no es así, los referidos artículos del Código Civil proveen otros dos métodos para que el letrado descargue su obligación de identificar a la persona ante sí. No obstante, si el notario en efecto conoce al testador tiene la obligación de hacerlo constar expresamente en la escritura.[3]

---

[3] En Deliz Muñoz v. Igartúa Muñoz, supra, este Tribunal resolvió que la dación de fe en torno al conocimiento del testador es un requisito de fondo y por ende, si el notario autorizante de un testamento conoce al testador pero no lo hace constar expresamente en la escritura, el testamento es nulo ab initio. Se señaló además que en esos casos no se puede presentar prueba para demostrar dicho conocimiento.

Dicha obligación no surge de los citados Artículos 634 y 635, sino del Artículo 649 del Código Civil, que dispone en lo pertinente:

> **El notario dará fe**, <u>**al final del testamento**</u>, de haberse cumplido todas las dichas formalidades y **de conocer al testador** o a los testigos de conocimiento en su caso. 31 L.P.R.A. sec. 2186. (Énfasis nuestro).

## III.

Según señalado anteriormente, tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones concluyeron que el notario Juan A. Méndez Miranda no conocía personalmente al señor Moreno Visbal al momento de autorizar el testamento abierto de éste. Los foros *a quo* llegaron a dicha conclusión enfatizando que el notario corroboró la identidad del testador mediante los medios establecidos en el Art. 17 (c) de la Ley Notarial, *supra*, esc. núm. 1. Consideraron los foros recurridos que, al no hacer constar que le fue imposible identificar al testador mediante conocimiento personal antes de emplear los referidos medios supletorios de identificación, el notario violó las antes citadas disposiciones del Código Civil que regulan la forma de los testamentos. Es por eso que los foros *a quo* entendieron que el testamento en cuestión era nulo. Erraron al así resolver.

---

Sin embargo, como veremos más adelante, el testamento ante nos en el caso de autos es distinto al del caso referido.

Si el notario autorizante del testamento ante nos hubiese obviado por completo el requisito de dar fe en cuanto a su conocimiento del testador, el resultado del caso de autos estaría sujeto a lo resuelto en Deliz Muñoz v. Igartúa Muñoz, supra. Sin embargo, no estamos ante esa situación. **En el caso de autos, el notario autorizante asegoró bajo su fe notarial, al final del testamento, que conocía al testador según requiere el antes citado Artículo 649 del Código Civil.**[4]

Cierto es que en el testamento ante nos aquí el notario Méndez Miranda empleó de manera innecesaria uno de los medios supletorios de identificación contemplados en la Ley Notarial. Aparentemente el referido letrado actuó bajo la premisa errónea de que, en materia de formalidades testamentarias, aplica el refrán popular: *para que falte, mejor que sobre.*[5] No obstante, como habíamos adelantado, al analizar como un todo el testamento ante nuestra consideración, es claro que fue incorrecta la determinación de nulidad de los foros recurridos. La redundancia aludida

---

[4] Cabe señalar que el notario en cuestión no especificó que su conocimiento del testador era "personal". Dicha salvedad, aunque deseable para aclarar lo que el notario quiere comunicar, no es requerida por los artículos pertinentes del Código Civil.

[5] La confusión es confirmada en la réplica a la moción solicitando sentencia sumaria parcial presentada ante el Tribunal de Primera Instancia. En la misma, los peticionarios argumentaron que a pesar de que "el notario autorizante manifestó expresamente conocer personalmente al Testador, indicó el número de su licencia de conducir para atestiguar que también lo identificó de tal forma; todo ello en cumplimiento del Artículo 17-C de la Ley Notarial y el artículo 624 del Código Civil..."

no constituye un error de tal magnitud que justifique o requiera la medida drástica de declarar que el testamento es nulo.

En materia de interpretación testamentaria, el criterio primordial que rige es la salvaguarda de la última voluntad del testador. Cuando los tribunales nos encontramos con que el notario autorizante de un testamento no ha cumplido a cabalidad con alguna de las formalidades requeridas por la Ley, debemos indagar cuál es el propósito o función social de dicha solemnidad y si su omisión es tan grave que tiende a menoscabar la garantía sobre la sinceridad o autenticidad del testamento. La voluntad del testador -aunque conocida e indubitada-no es la única consideración que debe ser atendida por los tribunales. Algunas formalidades por su propia naturaleza son de carácter esencial. Pero en derecho es claro que unas formalidades tienen mayor importancia que otras,[6] por lo que no debemos exigir el cumplimiento de todas so pena de nulidad del testamento. Así, se ha señalado que:

> Entre el principio de seguridad jurídica -que se quiere salvaguardar mediante el estricto sometimiento a la forma- y el respeto a la voluntad del testador, ésta queda supeditada a aquélla. Pero **el riguroso precepto de que cualquier defecto de forma, por nimio que sea, haya de originar la nulidad del testamento, aunque no exista duda sobre la voluntad real del testador, puede resultar a veces excesivamente radical, cuando el requisito inobservado o defectuosamente cumplido no responda a una finalidad práctica suficientemente justificada por la necesidad de garantizar la sinceridad o autenticidad del testamento.** J. Osorio Morales, *Manual de Sucesión Testada*, Ed. Inst. Estudios

---

[6] Véase, González Tejera, *supra*, pág. 781.

Políticos, Madrid, pág. 467 (1957). (Énfasis nuestro).

Los tribunales debemos ser particularmente cuidadosos al atribuirle significado a las expresiones que los notarios vierten en los testamentos que autorizan. En ese sentido, anteriormente hemos expresado que "no ha sido el ánimo del legislador que para hacer constar los requisitos externos del testamento, vengan los notarios obligados a sujetarse a la forma y vocablos usados en los preceptos de la Ley". Rodríguez Sardenga v. Soto Rivera, 108 D.P.R. 733, 734 (1979) (Opinión particular del Juez Asociado Martín). Véanse, además, Id. pág. 761, 769 (Opinión del Juez Negrón García); Paz v. Fernández, supra, pág. 749; Vivaldi v. Registrador, 86 D.P.R. 629, 641 (1962). Acorde con esa línea de pensamiento, un comentarista ha señalado que:

> para que se entiendan cumplidos los requisitos externos no es preciso sujetarse a la forma y vocablos usados en los preceptos legales, debiendo tenerse en cuenta la índole de las formalidades de que se trata para apreciar, con relación a su trascendencia, el límite dentro del cual pueden estimarse cumplidas, armonizando así la voluntad conocida del testador con los requisitos externos de su expresión. (S. 11 febrero 1929, confirmatoria del criterio de la de 30 abril 1909). J. L. Santamaría Cristóbal, Comentarios al Código Civil, V.I, Ed. Rev. Derecho Privado, Madrid, pág.705 (1958).

Estamos concientes de que la inobservancia de los requisitos de forma en materia testamentaria es un problema recurrente en nuestra jurisdicción. Es de suma importancia que los notarios cumplan con los diversos requisitos de forma que la Ley les impone para la preparación de

documentos públicos. Esto resulta particularmente apremiante cuando está en juego la última voluntad de una persona, ya que si surge una controversia en torno a la validez del documento, ésta no estará disponible para aclararla. Sin embargo, anular un testamento a la menor provocación para que los notarios aprendan su lección puede ser equivalente a matar al paciente para curar la enfermedad. No menospreciamos la necesidad de que los notarios ejerzan sus funciones cabalmente. Pero no podemos anteponer esa necesidad sobre la norma rectora sucesoral de hacer valer la clara voluntad del testador en casos como el de autos. En fin de cuentas, el ejercicio cabal de la notaría aquí es sólo un medio para lograr la protección de la integridad testamentaria, y no al revés.

Concluimos que, en casos como el de autos, cuando el notario autorizante combina un medio supletorio para identificar al testador con una dación de fe en torno al conocimiento del testador –**a diferencia de cuando no realiza dación de fe alguna**– los tribunales deberán cerciorarse de si en efecto el notario conocía personalmente al testador, antes de resolver si el testamento es nulo o no.[7] De esta

---

[7] Para llevar a cabo dicho análisis los tribunales podrán considerar cualquier evidencia admisible y pertinente, sin tener que limitarse al texto del testamento en cuestión, ya que es precisamente del mismo que surge la duda. Al así disponer fomentamos que el juzgador pueda adquirir "por el conjunto de todas las pruebas practicadas, el convencimiento íntimo de que se dio cumplimiento a la identificación del testador..." F. Puig Peña, Compendio de Derecho Civil Español, 3ra Ed., Ediciones Pirámide, S.A., Madrid, pág. 210 (1976); Cf. A. Coello Gallardo, Sucesiones: Comentarios al Código Civil, Tomo I. Ed. Reus, Madrid, págs.

manera <u>se procura lograr un justo balance entre los meritorios propósitos del articulado del Código Civil que requiere la dación de fe sobre el conocimiento personal del testador y la principal razón de ser de todas las solemnidades testamentarias, esto es, hacer valer la última voluntad del testador</u>.

En el caso de marras existe suficiente evidencia en el expediente para concluir que en efecto, el notario autorizante del testamento conocía personalmente al señor Moreno Visbal y que eso fue lo que intentó comunicar al dar fe del "conocimiento, profesión y vecindad" del otorgante. Según surge del expediente, el notario Juan A. Méndez Miranda había autorizado anteriormente varias escrituras sobre segregación y donación en las que comparecieron el señor Moreno Visbal y su esposa la señora Martínez Ventura.[8] Por ende, resulta evidente que el notario conocía personalmente al testador. Abona a dicha conclusión el hecho de que la parte recurrida no alegó en ningún momento que el notario no conocía al testador, sino que se limitó a señalar la supuesta falta de dación de fe al respecto como un defecto que acarreaba la nulidad del testamento.

---

188 y 194 (1952), citando las sentencias de 28 de mayo de 1915 y de 37 de junio de 1917; J. L. Santamaría Cristóbal, <u>Comentarios al Código Civil</u>, V.I, Editorial Revista de Derecho Privado, Madrid, pág. 703 (1958), citando las sentencias de 27 junio 1917 y 12 junio 1926.

[8] Las referidas escrituras son las siguientes: Escritura número noventa y seis (96) de 1995; Escritura número ciento sesenta y nueve (169) de 1996; y la Escritura número ocho (8) de 1997.

Por los fundamentos expresados anteriormente, se revoca la sentencia emitida por el Tribunal de Apelaciones y se ordena dictar sentencia de conformidad con lo aquí resuelto reconociendo la validez del testamento del Sr. Rafael Moreno Visbal.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Iris Nilda Moreno Martínez

    Apelada


      vs.                AC-2005-008
Certiorari


Carmen Martínez Ventura,
Rafael A. Moreno Vélez,
Et Al.

    Apelantes


SENTENCIA


San Juan, Puerto Rico, a 28 de junio de 2006.


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la sentencia emitida por el Tribunal de Apelaciones y se ordena dictar sentencia de conformidad con lo aquí resuelto reconociendo la validez del testamento del Sr. Rafael Moreno Visbal.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente; entiende que el Tribunal, al avalar el testamento en controversia en el presente caso, lamentablemente ha abaratado y desequilibrado la práctica de la Notaría en nuestra jurisdicción, razón por la cual se reserva el derecho a emitir una Opinión disidente, en etapa de reconsideración, si es que la misma se solicita. El Juez Presidente señor Hernández Denton no intervino.


                Aida Ileana Oquendo Graulau
             Secretaria del Tribunal Supremo